AMERICAN MOTORS CORPORATION, Petitioner-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Respondent.†

Court of Appeals

*No. 82–389. Submitted on briefs May 31, 1983.—*
*Decided July 19, 1983.*
(Also reported in 338 N.W.2d 518.)

† Petition to review granted.

For the appellant the cause was submitted on the briefs of *L.C. Hammond, Jr., Mary Pat Koesterer* and *Quarles & Brady* of Milwaukee.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Maureen A. Mc Glynn,* assistant attorney general.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J. American Motors Corporation (AMC) appeals from a judgment affirming the Labor and Industry Review Commission's (LIRC) finding of fact, conclu-

sions of law, and order holding that AMC unlawfuly discriminated against Sharon Basile on the basis of handicap when it refused to hire her. AMC contends that (1) Basile's physical stature is not a handicap under the Wisconsin Fair Employment Act;[1] (2) if her stature is a handicap under those provisions, AMC did not discriminate against her because of her handicap; (3) LIRC's failure to consult with the hearing examiner for the Department of Industry, Labor and Human Relations (DILHR) before rejecting the examiner's determinations deprived AMC of due process. Because we conclude that LIRC and the circuit court erroneously concluded that Basile's stature is a handicap under the Fair Employment Act, we reverse.

In 1972, Basile applied for a job at AMC as an unskilled hourly employee. At that time, Basile was four feet, ten inches tall, weighed 105 pounds and was in good health. AMC had no height or weight requirements for unskilled hourly employees when Basile applied.

Under a union contract then in effect at AMC, all unskilled workers were required to complete a probationary period of sixty working days during which they could be assigned to any entry level job in the plant. The entry level jobs were characterized as the least desirable. Several of the jobs involved reaching and lifting heavy loads. During the probationary period, employees had no right to request a particular job.

After Basile applied, James Madden, AMC's supervisor of employee services, interviewed her. Based on her application and interview, he recommended that she have a physical examination with Dr. Seidl, the medical director of AMC's plants. Seidl examined Basile on July 7, 1972. He characterized the examination as a routine physical that is given to all AMC employees. The examination lasted approximately ten minutes and included blood,

---

[1] Chapter 111, sub. II, Stats.

urine, and hearing tests. Seidl also asked Basile to touch her toes, lift her arms above her head and stretch her arms to the side. Basile was not asked to lift weights during the examination, nor was she given tests to determine grip strength.

After Basile completed the examination, Seidl recommended Basile not be hired for the position for which she had applied. He noted on the medical examination form that Basile had scoliosis[2] and a lack of muscular development. Seidl later testified that he did not recommend Basile for employment because he believed she was too small to perform the entry level jobs.

Based on Seidl's recommendation, Raymond Martin, director industrial relations, Raymond Paul, manager of employee benefits and services, and Seidl held a meeting during which they decided not to hire Basile. Basile later testified that in October, 1972, Madden informed her that she was too small and would not be hired.

Basile filed a complaint with the federal Equal Employment Opportunity Commission, which was deferred to the Equal Rights Division of DILHR. Basile alleged that AMC had discriminated against her on the basis of sex. After DILHR found no probable cause on the issue of sex discrimination, Basile filed an amended complaint in 1975. She alleged that AMC had discriminated against her on the basis of handicap and on the basis of sex in violation of the Wisconsin Fair Employment Act.

In December, 1975, the examiner for DILHR issued recommended findings of fact, conclusions of law, and an order finding no discrimination on the basis of sex. Although the examiner found that scoliosis was not a factor in Basile's rejection for employment at AMC, she also found that AMC had not hired Basile because of her height and weight. The examiner concluded that Basile is handicapped and that AMC had unlawfully discriminated

---

[2] Scoliosis is a lateral curvature of the spine.

against her on the basis of handicap. LIRC affirmed with minor modifications on December 3, 1976. AMC appealed LIRC's decision to the circuit court, which reversed and remanded to DILHR for investigation and an initial determination whether there was probable cause to believe AMC had discriminated against Basile on the basis of handicap.

DILHR made an initial determination of probable cause and held a hearing on the merits of the handicap discrimination charge on December 6, 1978. The examiner issued a decision in which she concluded that Basile is handicapped within the meaning of the Fair Employment Act because of her height and weight, and that AMC rejected her for employment because of her handicap. The examiner also concluded, however, that Basile was unable to effectively perform AMC's entry level job duties at the standards AMC set, and that AMC did not discriminate against Basile on the basis of handicap in violation of the Act.

LIRC subsequently set aside the examiner's decision and remanded for a further evidentiary hearing to determine whether Basile's handicap was reasonably related to her ability to adequately perform the duties to which she would have been assigned at AMC. After the hearing on remand, the examiner issued a decision similar to her prior one. LIRC reversed the examiner's decision and concluded that AMC had discriminated against Basile on the basis of handicap in violation of the Act. The circuit court affirmed LIRC's decision and order.

In reviewing a circuit court order affirming an order of an administrative agency, we must decide whether the court erred in its determination. *Dairy Equipment Co. v. DILHR*, 95 Wis. 2d 319, 326, 290 N.W.2d 330, 333–34 (1980). If the agency's action depends on any fact found by the agency in a contested proceeding, we may

not substitute our judgment for that of the agency concerning the weight of the evidence. Section 227.20(6), Stats. We must remand or set aside the agency's determination, however, if we find that its action depends on any finding of fact not supported by substantial evidence in the record. *Id.*

Under sec. 227.20(5), Stats., questions of law are always reviewable by the court. The construction of a statute or the application of a statute to a particular set of facts is a question of law. *Id.* at 327, 290 N.W.2d at 334. Although we are not bound by an agency's interpretation, we must accord due weight to the agency's experience, technical competence, and specialized knowledge. Section 227.20(10), Stats. We hesitate to substitute our judgment for that of the agency on a question of law if there is a rational basis for the agency's interpretation and it does not conflict with the statute's legislative history, prior court decisions, or constitutional prohibitions. *Dairy Equipment,* 95 Wis. 2d at 327, 290 N.W.2d at 334.

█

In *Boynton Cab Co. v. DILHR,* 96 Wis. 2d 396, 406, 291 N.W.2d 850, 855 (1980), our supreme court cited three points essential to establishing discrimination in employment due to a handicap under the 1973 provisions of the Fair Employment Act: (1) the complainant must be handicapped within the meaning of the Act; (2) the complainant must establish that the employer's discrimination was on the basis of handicap, and (3) it must appear that the employer cannot justify its alleged discrimination under the exception set forth in sec. 111.32 (5)(f), Stats. (1973).[3] AMC contends that LIRC and

---

[3] Section 111.32(5)(f), Stats. (1973), provided, in part:

The prohibition against discrimination because of handicap does not apply to failure of an employer to employ or to retain as an employe any person who because of a handicap is physically or

the circuit court erroneously determined that Basile's physical stature is a handicap within the meaning of the Fair Employment Act. Whether Basile's stature constitutes a handicap is a conclusion of law, which we may review. *Dairy Equipment,* 95 Wis. 2d at 327, 290 N.W.2d at 334.

There is no definition of "handicap" in the Fair Employment Act. Our supreme court, however, has defined that term as "a disadvantage that makes achievement unusually difficult; esp.: a physical disability that limits the capacity to work." *Chicago, Milwaukee, St. Paul, & Pacific RR. v. DILHR,* 62 Wis. 2d 392, 398, 215 N.W.2d 443, 446 (1974). In *Dairy Equipment,* our supreme court also construed the Fair Employment Act as applying to an individual with only one functioning kidney who had the capacity to perform his work but who his employer perceived as being handicapped.

Both LIRC and the circuit court concluded that Basile is handicapped within the meaning of the Fair Employment Act because of her height and weight, and that AMC perceived her stature to be a handicap.[4] We conclude that this determination is without a rational basis and is therefore erroneous.

"Disability" is defined as "the condition of being disabled . . . inability to pursue an occupation because of

---

otherwise unable to efficiently perform, at the standards set by the employer, the duties required in that job . . . .

This section was amended and renumbered § 111.32(5)(f)(1), Stats., effective May 27, 1976. Because the alleged discrimination against Basile occurred in 1972, and because Basile filed her initial and amended complaints with DILHR before the effective date of the amendment, the 1973 version applies to this case. *See Dairy Equipment Co. v. DILHR,* 95 Wis. 2d 319, 331–32 n 8, 290 N.W.2d 330, 336 n 8 (1980).

[4] Although Dr. Seidl listed scoliosis on Basile's medical examination form, the evidence indicates that AMC refused to hire Basile because of her stature and not because of scoliosis.

physical or mental impairment . . . ."[5] "Impairment" is defined as "injury . . . deterioration . . . lessening."[6] Unlike the employee in *Dairy Equipment,* Basile has no condition that could be considered a physical disability or impairment. A height of four feet, ten inches, and a weight of 105 pounds is not an injury, deterioration, or lessening and could not reasonably fall within the commonly understood meaning of disability or impairment. The fact that Basile's height and weight are below average does not mean that her stature necessarily makes achievement unusually difficult or that she has a physical disability that limits her capacity to work. Basile's testimony at the hearings indicates that she has been hired for other factory jobs and has satisfactorily performed those jobs with little or no difficulty. There is no evidence that her physical stature has imposed limitations on her general capacity to work or that it has interfered with other life functions.

LIRC nevertheless argues, and the circuit court concurred, that AMC *perceived* Basile's physical stature as a handicap that made her unable to perform the tasks required of a probationary employee. LIRC contends that under the supreme court's holding in *Dairy Equipment,* a condition that an employer perceives as making achievement unusually difficult, even though it may not realistically do so, constitutes a handicap under the Act. LIRC's reliance on *Dairy Equipment* is, however, misplaced.

In *Dairy Equipment,* the employer discharged the employee even though he considered the employee to be a good worker because he perceived that the employee's physical condition might make him sensitive to future injury. The court held that although the employee's condition did not limit his capacity to work, the fact

---

[5] Webster's New Collegiate Dictionary 324 (1977).
[6] Webster's Third New Int'l Dictionary 1131 (1976).

that his employer perceived him as having such a condition was sufficient to bring him within the handicap discrimination provisions of the Fair Employment Act.

In this case, AMC did not regard Basile's stature as a handicap that limited her capacity to work. Dr. Seidl and the committee that reviewed Basile's application and physical examination results merely concluded, based upon Dr. Seidl's observations, their knowledge of the requirements of the entry level jobs, and their past experience observing employees perform those jobs, that Basile did not have the necessary physical qualifications required for those jobs. AMC's conclusion that Basile was unqualified for the particular job for which she applied[7] does not mean that it perceived her as having a physical or mental disability that makes achievement unusually difficult or that limits the capacity to work.

To hold that Basile is handicapped because her physical stature disqualified her from one particular job of her choice would also lead to anomalous results. An individual who is five feet, seven inches tall and who wants to play professional basketball but is rejected by the Milwaukee Bucks because of his height could then argue that he had a physical disability, and that the Bucks may have unlawfully discriminated against him on the basis of his disability, even though his height would not limit his capacity to perform several other jobs. A law school graduate who ranks in the bottom third of his class and who fails to obtain a desired judicial clerkship could contend that he has a mental disability and that he was not hired because of his "handicap." In addition, if a height of four feet, ten inches, and a weight of 105 pounds could be considered a handicap when a person of that stature is not hired for the particular job of his

[7] Basile applied for a job as an unskilled hourly worker. This job consisted of several entry level jobs during the probationary period.

choice, there is no logical stopping point for the myriad heights and weights that could become handicaps if other applicants are rejected for jobs they seek because the job requirements necessitate physical qualifications that the applicants may not possess.

An employer's belief that an applicant is unqualified for a particular job does not necessarily mean that the applicant is handicapped. To hold otherwise would impose an unreasonable burden on employers to defend their evaluations of applicants against charges of handicap discrimination brought by unsuccessful applicants. It would also expand the meaning of "handicap" beyond any reasonable construction. We do not believe that the legislature intended such results when it enacted provisions governing discrimination on the basis of handicap.

Because we conclude that Basile's stature is not a handicap within the meaning of the Act, Basile did not establish a prima facie case of handicap discrimination under the Act. We therefore reverse the circuit court's judgment. Our conclusion renders it unnecessary to decide the other issues AMC raises on appeal.

*By the Court.*—Judgment reversed.