AMERICAN MOTORS CORPORATION, Petitioner-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Respondent-Petitioner.

Supreme Court

*No. 82–389. Argued April 23, 1984.—Decided June 28, 1984.*

(Also reported in 350 N.W.2d 120.)

For the respondent-petitioner the cause was argued by *Maureen McGlynn,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the petitioner-appellant there was a brief by *L.C. Hammond, Jr., Mary Pat Ninneman* and *Quarles & Brady,* Milwaukee, and oral argument by *Ms. Ninneman.*

WILLIAM A. BABLITCH, J.   The Labor and Industry Review Commission (LIRC) seeks review of a decision holding that Sharon Basile, who is four feet, ten inches tall, and who American Motors Corporation (AMC) did not hire for a particular job because of her small stature, is not handicapped under the Wisconsin

Fair Employment Act (Act). The issue for review is whether Basile is handicapped within the meaning of the Act because of her small stature.

Because Basile's stature is not a disability or impairment that makes achievement unusually difficult or that limits her capacity to work, and because AMC did not perceive her as having such a disability or impairment, we hold that she is not handicapped under the Act. We affirm the decision of the court of appeals.

In 1972, Sharon Basile applied for employment with AMC as an unskilled hourly production worker. At that time, Basile was four feet, ten inches tall, weighed 105 pounds and was in good health. Under a union contract then in effect at AMC, all unskilled workers were required to complete a probationary period during which they could be assigned on a daily basis to any entry level job in the plant. Several entry level jobs required considerable reaching and lifting substantial weights.

Basile subsequently was interviewed by James Madden, who was AMC's supervisor of employee services at that time. Based on Basile's application and interview, Madden recommended that she have a physical examination with Dr. Seidl, medical director of AMC's plants. On July 7, 1972, Dr. Seidl gave Basile the routine physical examination that had been given to all AMC employees. The examination lasted approximately ten minutes and included urine, blood and hearing tests. Dr. Seidl also asked Basile to touch her toes, lift her arms above her head and stretch her arms to the side. Through this procedure, Dr. Seidl attempted to determine Basile's reach. Dr. Seidl subsequently recommended that Basile not be hired. He later testified that he did not recommend Basile for employment because he believed she was too small to perform the jobs that were available.

AMC did not hire Basile. Basile later testified that in October, 1972, Madden informed her that she was too

small and would not be hired. Raymond Paul, AMC's manager of employee benefits and services, testified that the decision not to hire Basile was based both on the medical evaluation made by Dr. Seidl, and on past experience with regard to individuals between five feet and five feet, six inches tall who had transferred into the production department where Basile would have worked had she been hired.

On October 19, 1972, Basile filed a complaint against AMC with the Department of Industry, Labor and Human Relations (DILHR). Although Basile originally alleged that AMC had discriminated against her on the basis of sex, she amended her complaint in 1975 to allege that AMC also had discriminated against her on the basis of handicap, in violation of the Fair Employment Act.

On December 29, 1980, after numerous hearings and proceedings before DILHR, a hearing examiner for DILHR concluded that Basile was handicapped within the meaning of the Act, but that AMC had not unlawfully discriminated against her. LIRC reversed, holding that Basile was handicapped under the Act, and that AMC had failed to demonstrate that her handicap was reasonably related to her ability to adequately perform the required job duties.

AMC appealed LIRC's order to the circuit court, which affirmed the order. AMC subsequently appealed to the court of appeals. In a published decision, cited below,[1] the court of appeals reversed, holding that Basile was not handicapped within the meaning of the Act. LIRC filed a petition for review with this court, which was granted.

In a handicap discrimination case arising under the Fair Employment Act, a complainant alleging such dis-

---

[1] *American Motors Corp. v. LIRC,* 114 Wis. 2d 288, 338 N.W.2d 518 (Ct. App. 1983).

crimination has the burden of proving that he or she is handicapped within the meaning of the Act, and that an employer's discrimination was on the basis of handicap. *See Boynton Cab Co. v. ILHR Department,* 96 Wis. 2d 396, 406, 291 N.W.2d 850 (1980) ; *Chicago, M., St. P. & P.R.R. Co. v. ILHR Dept.,* 62 Wis. 2d 392, 396, 215 N.W. 2d 443 (1974). If the complainant meets that burden of proof, the burden shifts to the employer to prove that the complainant is ". . . physically or otherwise unable to efficiently perform, at the standards set by the employer, the duties required in that job." Section 111.32(5)(f), Stats. 1973.[2] *See Chicago,* 62 Wis. 2d at 398.

The issue in this case centers on whether Basile met her threshold burden of proving that she is handicapped within the meaning of the Act. Whether Basile's stature constitutes a handicap under the Act is a conclusion of law. *Chicago,* 62 Wis. 2d at 396. Under sec. 227.20(5), Stats., a reviewing court must set aside or modify an agency action if the agency has erroneously interpreted a provision of law, or it may remand to the agency for further action under a correct interpretation of the provision of law. Thus, under that subsection, questions of law are always reviewable by this court. *Dairy Equipment Co. v. ILHR Department,* 95 Wis. 2d 319, 326, 290 N.W.2d 330 (1980). Although this court is not bound by an agency's conclusion of law, we hesitate to substitute our judgment for that of the agency on a question of law if the agency's conclusion has a rational basis. 95 Wis. 2d at 327.

LIRC argues that Basile is handicapped within the meaning of the Act because AMC perceived her physical

---

[2] Section 111.32(5)(f), Stats. 1973, subsequently was renumbered and amended. Because sec. 111.32(5)(f), 1973 was renumbered and amended after Basile filed her amended complaint, we cite to the unamended version (sec. 111.32(5)(f), 1973) in this case. *See Dairy Equipment Co. v. ILHR Department,* 95 Wis. 2d 319, 331–32 n. 8, 290 N.W.2d 330 (1980).

stature to be a handicap that would prevent her from efficiently performing the duties of the job for which she applied. AMC contends, however, that Basile has no physical or mental disability or impairment, and that she is not handicapped under the Act merely because she was rejected for a particular job with AMC due to her stature.

The provisions of the Fair Employment Act in effect at the time Basile filed her amended complaint with DILHR in which she alleged discrimination on the basis of handicap did not define "handicap" or "handicapped individual."[3] In *Chicago,* this court accorded the word "handicap" its meaning in common usage, and defined it as " 'a disadvantage that makes achievement unusually difficult; esp.: a physical disability that limits the capacity to work.' " 62 Wis. 2d at 398, quoting Webster's *New International Dictionary* 1027 (3d ed. 1961). In applying this definition to the facts in *Chicago,* this court concluded that ". . . handicap . . . must be defined as including such diseases as asthma which make achievement unusually difficult." 62 Wis. 2d at 398. This court therefore held that an employee who had a history of asthma was handicapped within the meaning of the Act.

In *Dairy Equipment Co. v. ILHR Department,* 95 Wis. 2d 319, 290 N.W.2d 330 (1980), this court elaborated on the definition of "handicap" under the Act. In that case, an employee was terminated because he had only one kidney. Although his employer conceded that the employee had the present ability to perform the required job duties

---

[3] After Basile filed her amended complaint, the legislature created sec. 111.32(8), Stats., in ch. 334, Laws of 1981, effective August 4, 1982. This provision specifically defines "handicapped individual" for purposes of the Fair Employment Act. Because there is no indication that the legislature intended a retroactive application of this statute, the provisions of the Act in effect at the time Basile filed her amended complaint apply in this case. *See Dairy Equipment Co. v. ILHR Department,* 95 Wis. 2d 319, 331–32, n. 8, 290 N.W.2d 330 (1980).

and had satisfactorily performed those duties, the employer nevertheless believed that continued employment presented too great a risk of future injury to his remaining kidney. The employee subsequently commenced a handicap discrimination action against the employer.

The employer argued that the employee was not handicapped under the Act because his having only one kidney did not make "achievement unusually difficult." 95 Wis. 2d at 329. Although this court acknowledged that the employee was not actually limited in his capacity to work, and that achievement was not unusually difficult, we nevertheless concluded that he was handicapped because the employer *perceived* the employee's physical condition (one kidney) as a handicap that limited his capacity to work. 95 Wis. 2d at 331. The decisions in *Chicago* and *Dairy Equipment* therefore indicate that in order to be considered handicapped within the meaning of the Act, a person must actually have a physical or mental disability that makes achievement unusually difficult or limits the capacity to work, or the person must be perceived as having such a disability.[4]

---

[4] In fact, as noted in note 3, supra, in 1981 the legislature essentially adopted this formulation when it created sec. 111.32(8), Stats. That provision defines "handicapped individual" as an individual who:

"(a) Has a physical or mental impairment which makes achievement unusually difficult or limits the capacity to work;

"(b) Has a record of such an impairment; or

. "(c) Is perceived as having such an impairment."

The bill drafting file to ch. 334, Laws of 1981, contains a memorandum dated July 16, 1980, to Wisconsin State Senator Braun's office from Kathleen Curran, a legislative attorney with the Legislative Reference Bureau. In the memorandum, Curran quoted the definition of handicap that this court set forth in *Chicago, M., St. P. & P.R.R. Co. v. ILHR Department,* 62 Wis. 2d 392, 215 N.W. 2d 443 (1974). The memorandum also stated: "In its most recent handicap discrimination case, the Wisconsin Supreme Court ruled that the definition of handicap discrimination included both actual

One definition of "disability" is an ". . . inability to pursue an occupation because of physical or mental impairment." Webster's *New Collegiate Dictionary* 324 (1977). "Impairment" is defined as "the act of impairing or the state of being impaired: INJURY . . .: DETERIORATION . . . LESSENING . . . ." Webster's *Third New International Dictionary* 1131 (1961). "Impair" is defined as ". . . Deterioration, injury." *Id.* These definitions indicate that a "handicap" is an injury, deterioration or lessening that could impede a person's normal functioning in some manner and preclude the full and normal use of one's sensory, mental or physical faculties. Thus, a handicap within the meaning of the Act is a physical or mental condition that imposes limitations on a person's ability to achieve and capacity to work beyond the normal limitations that might render a person unable to make certain achievements or perform every possible job. All persons, given their individual characteristics and capabilities, have inherent limitations on their general ability to achieve or to perform certain jobs. All persons have some mental or physical deviations from the norm. However, such inherent limitations or deviations from the norm do not automatically constitute handicaps.

physical handicaps and physical conditions which the employer believed might be a handicap at some point in the future." The memorandum then cited this court's decision in *Dairy Equipment Co. v. ILHR Department*, 95 Wis. 2d 319, 290 N.W.2d 330 (1980). In a subsequent memorandum from Curran to Braun, dated August 6, 1980, Curran noted that the amendments placed ". . . into the subchapter [The Fair Employment Act] some concepts which are presently the law under judicial interpretation . . .", including "The definition of a handicapped person—taken from the Wisconsin supreme court interpretation and the federal rehabilitation act." The legislative history of sec. 111.32 (8), indicates that the legislature patterned the statutory definition of "handicapped individual" after the definitions of handicap that this court previously adopted in *Chicago* and *Dairy Equipment*.

A handicap is a mental or physical *disability* or *impairment* that a person has in addition to his or her normal limitations that makes achievement not merely difficult, but *unusually* difficult, or that limits the capacity to work.

We conclude that Basile's stature is not a disability or impairment that makes achievement unusually difficult or that limits her capacity to work. Although Basile's height and weight are below the norm, and may impose some limitations on her general ability to achieve and work, a person with her stature is capable of a wide range of achievements, including many that a taller and heavier person could not do. Thus, Basile's stature does not constitute such a significant deviation from the norm that it makes achievement *unusually* difficult, or limits her capacity to work. Indeed, her stature may make the performance of certain tasks or jobs unusually easier for her than for others.

LIRC argues, however, that even if Basile's stature is not inherently a handicap, it became a handicap within the Fair Employment Act because AMC perceived that her stature would limit her capacity to work in the particular job for which she had applied. LIRC contends that under this court's prior decision in *Dairy Equipment,* a person may be handicapped if the employer perceives that the person's physical condition limits his or her capacity to work in the particular job for which the person applied. However, we conclude that LIRC's reliance on *Dairy Equipment* is misplaced.

As previously noted, in *Dairy Equipment* an employee who had only one kidney nevertheless was able to perform the job duties to his employer's satisfaction. However, the employer terminated him because it concluded that the job exposed him to an undue risk of injury to his

remaining kidney. The employer contended that the employee was not handicapped because his physical condition did not make achievement unusually difficult.

This court rejected the employer's argument, and held that the employee was handicapped within the meaning of the Act because the employer *perceived* his physical condition (having only one kidney) as a handicap that limited his capacity to work. We stated:

"It would be both ironic and insidious if the legislative intent in providing the protection of the Fair Employment Act were afforded to persons who actually have a handicap that makes 'achievement unusually difficult' or limits their capacity to work, but the same protection is denied to those whom employers *perceive* as being handicapped." 95 Wis. 2d at 330. (Emphasis in original.)

We noted in *Dairy Equipment* that Congress had recognized the problems posed by a perceived handicap when it defined "handicapped individuals" in the Rehabilitation Act of 1973, 29 U.S.C. sec. 701 *et seq.*, to include not only a person who " 'has a physical or mental impairment which substantially limits one or more of such person's major life activities,' " but also a person who " *'is regarded as having such an impairment.'* " 95 Wis. 2d at 330, quoting Rehabilitation Act of 1973, 29 U.S.C. sec. 706 (6) (1976). (Emphasis in original.) We also cited a decision by the Washington Court of Appeals, *Barnes v. Washington Natural Gas Co.*, 22 Wash. App. 576, 591 P2d 461 (1979), in which the court held that an employee who was terminated because his employer erroneously believed that he suffered from epilepsy was discriminated against on the basis of handicap. This court referred to a statement by the Washington Court of Appeals in *Barnes* that the Washington State law prohibiting discrimination on the basis of handicap " '. . . should not be limited to those who actually have handicaps, excluding those who are discriminated against in the same way because they

are only *thought* to have handicaps.' " 95 Wis. 2d at 330, quoting *Barnes,* 591 P.2d at 465. (Emphasis in original.)

It is evident that the particular concern in *Dairy Equipment* was with ensuring that the protections afforded by the handicap discrimination provisions of the Fair Employment Act also apply to persons having a disability or impairment that does not actually make achievement unusually difficult or limit the capacity to work but nevertheless is perceived to do so. Thus, because the employee in *Dairy Equipment* had a disability or impairment (one kidney) which did not actually make achievement unusually difficult or limit the capacity to work but which the employer perceived as a handicap that limited his capacity to work, this court concluded that the employee was handicapped under the Act. This court did not hold, however, that an employer's belief that an applicant or employee is unqualified and cannot perform a particular job because of a mental or physical attribute necessarily renders that person handicapped within the meaning of the Act, or that the employer's failure to hire that person constitutes handicap discrimination.

Unlike the employee's physical condition in *Dairy Equipment,* Basile's stature is not a disability or impairment. Although her stature may impose certain limitations on her ability to perform every possible job, it is not an injury, deterioration or lessening that impedes her normal functioning. Nor is her stature such a substantial deviation from the norm that it makes achievement unusually difficult or limits her capacity to work. Thus, Basile had no physical limitation that AMC could have perceived to be a disability or impairment, let alone a disability or impairment that made achievement unusually difficult or limited her capacity to work. This case is therefore distinguishable from *Dairy Equipment.* In *Dairy Equipment,* the employee had a disability or impairment that did not actually make achievement unus-

ually difficult or limit his capacity to work. However, because the employer perceived the employee's disability or impairment as limiting his capacity to work, this court held that the employee was handicapped under the Act. Here, Basile does not even have a disability or impairment about which a perception could have been made that the disability or impairment made achievement unusually difficult or limited her capacity to work. In addition, this case does not involve the situation present in *Barnes* in which the employer believed that the employee had an impairment (epilepsy) which the employee did not, in fact, have. Therefore, the rationale set forth in *Dairy Equipment* concerning a perceived handicap is not applicable to the facts of this case.[5]

To accept LIRC's conclusion that Basile is "handicapped" under the Fair Employment Act merely because her stature played a part in AMC's decision not to hire her for a particular job would lead to unreasonable results that the legislature could not have intended. A person who is five feet, six inches tall who is rejected by the Milwaukee Bucks for a position as a professional basketball player could argue that he was discriminated against on the basis of handicap because he had a disability or impairment that limits the capacity to work, or that he was perceived as having a disability or impairment that limits the capacity to work. Similarly, a slightly nearsighted person who wears glasses and who is rejected for a position requiring 20/20 uncorrected vision could contend that he or she has a disability or impairment that limits the capacity to work or that the employer perceives

---

[5] The dissent labels the above analysis, without any explanation, "confused and confusing." (Abrahamson, J., dissenting op. at 721.) Inasmuch as the dissent fails to point out why the writer of the dissent is confused or how the majority's analysis is confusing, we find that statement in the dissent not at all helpful or enlightening, and therefore not persuasive.

him or her as having a disability or impairment that limits the capacity to work. However, although both individuals, like all persons, have characteristics that impose *some* limitations on their ability to do particular jobs, in neither case could one seriously argue that the person has a disability or impairment that makes achievement *unusually* difficult, or that limits the capacity to work.[6]

To conclude that either person in the above examples is "handicapped" simply because the person's physical or mental characteristic, which is not and could not be perceived as a disability or impairment, failed to meet the requirements of a particular job would expand the definition of "handicap" under the Act beyond any reasonable meaning, and would lead to unreasonable results. Although the Act must be liberally construed, sec. 111.31 (3), Stats., it must not be interpreted in a manner that leads to absurd or unreasonable results. *See State v. Mendoza,* 96 Wis. 2d 106, 115, 291 N.W.2d 478 (1980). Our conclusion that Basile is not handicapped within the meaning of the Act avoids such unreasonable results.

We therefore conclude that LIRC's determination that Basile is handicapped within the meaning of the Act lacks a rational basis. Because Basile did not meet her burden of proving that she is handicapped within the meaning of the Act, she did not establish a prima facie case of handicap discrimination under the Act.[7] We affirm the decision of the court of appeals.

---

[6] Under the reasoning employed by the dissent, the people in the above examples would be "handicapped" within the meaning of the Act. To hold, as the dissent does, that this is the legislative intent, is to carry the liberal interpretation of the Act as mandated by the statute to irrational absurdity. Although some may believe that it is difficult to insult the legislature, the reasoning of the dissent comes very close.

[7] Because of our conclusion that Basile is not handicapped within the meaning of the Act, we need not address the other arguments AMC presented in its brief to this court.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). An employer has the legal right to refuse to hire a person who cannot do the job. If Sharon Basile cannot perform the entry level job at AMC at the standards set by AMC, AMC can refuse to hire her, and she loses this lawsuit. The employer is thus fully protected under the Fair Employment Act. Sec. 111.32(5)(f), Stats. 1973.[1]

But Sharon Basile's ability to do AMC's job is not the issue at this stage of the case. The issue here is a legal issue of statutory interpretation—whether Sharon Basile is handicapped as that term is used in the Wisconsin Fair Employment Act.

AMC refused to hire Sharon Basile because AMC thought she was too small to be able to do the job. When Basile applied for a job at AMC, an AMC doctor gave her a ten-minute physical examination. It included grasping her arms and legs and examining her back. The doctor concluded from her outward appearance—her height, weight, and perceived lack of muscle development—that she would be unable to do the job. On the doctor's recommendation, AMC refused to hire Basile.

By perceiving Basile's stature as a disadvantage that would make achievement unusually difficult or as a physical disability that would limit her capacity to work,[2]

---

[1] Sec. 111.32(5)(f), Stats. 1973, provides that "the prohibition against discrimination because of handicap does not apply to failure of an employer to employ or retain as an employee any person who because of a handicap is physically or otherwise unable to efficiently perform, at the standards set by the employer, the duties required in that job."

[2] In *Chicago, M., St. P. & P. R.R. Co. v. ILHR Dept.*, 62 Wis. 2d 392, 398, 215 N.W.2d 443 (1974), we said that a person is handicapped within the Act if she or he has a physical disadvantage, impairment, or disability "that makes achievement

AMC made short stature a protected classification under the Act. At the time Basile applied for employment, there were no "standards set by the employer," sec. 111.32(5) (f) ; AMC did not prescribe any height, weight, weight-lifting, or reach requirements for applicants for the job nor did it test Basile's abilities to lift weights or to reach or otherwise to perform the job. AMC simply assumed that she was "too small" to do the job and treated short stature as a handicap.

The 1973 Wisconsin Fair Employment Act—which is applicable in this case—does not define the term handicap. In essence the Act ensures that employers do not apply unreasonable generalizations about people in the hiring process. The intent of the Act is to prohibit employers from prejudging an applicant's qualifications on the basis of such matters as race, religion, gender, and handicap. Too often in our society a person of small stature is thought to have limited capacity to do physical work.[3] The purpose of the Act is to require the employer to consider the ability of the individual applicant to do the job rather than to assume the inability of the individual applicant on the basis of the applicant's physical condition. Under the Act the employer need hire only those persons who can do the job according to the employer's standards.

In adopting the Fair Employment Act the legislature recognized that frequently it is society's attitude toward a person's physical condition, rather than the physical condition itself, that handicaps the person. Handicap is in the eyes of the beholder. As Jeff Erlanger, a quadriplegic since birth, wisely observed on the occasion of his thirteenth birthday, "A lot of our handicap comes from society." Wis. State J., sec. 2, p. 1, May 26, 1984.

---

unusually difficult; esp.: a physical disability that limits capacity to work." See also majority opinion at pp. 713–715.

[3] Society's perception of short people is put to music in Randy Newman's hit song "Short People."

The legislature enacted the Fair Employment Act "to encourage and foster to the fullest extent practicable the employment of all properly qualified persons regardless of their age, race, creed, color, handicap, natural origin or ancestry." Sec. 111.31(3), Stats. 1973. The legislature has instructed the court to adopt a broad, liberal interpretation of the Act to accomplish its purposes. Sec. 111.31(3), Stats. 1973. In deciding this case the court fails to heed the legislature's instruction and subverts the legislative intent set forth in sec. 111.31, Stats. 1973. In addition, the majority's attempt to explain and distinguish our own prior cases, including *Dairy Equipment*,[4] is confused and confusing. Fortunately the majority opinion is limited to the facts of this case and the 1973 Act.

For the reasons set forth, I dissent.

---

[4] In *Dairy Equipment Co. v. ILHR Dept.*, 95 Wis. 2d 319, 328–31, 290 N.W.2d 330 (1980), we said that a person is handicapped within the Act if the employer perceives the person's physical condition as making achievement unusually difficult or as limiting the person's capacity to perform the job.