Charles OTTE, Harvey Thompson and Deanna Thompson, his wife, Don Brown and Eleanor Brown, his wife, John E. Williamson, Raymond S. Karinen and Helen R. Karinen, his wife, Jim Peterson and Jean Peterson, his wife, Mark Carter, Gary Gorr, Russell Haafs and Pauline Haafs, his wife, Plaintiffs-Appellants,

v.

State of Wisconsin, DEPARTMENT OF NATURAL RESOURCES, Defendant-Respondent.

Court of Appeals

*No. 87–0154. Submitted on briefs September 15, 1987.— Decided November 17, 1987.*

(Also reported in 418 N.W.2d 16.)

For plaintiffs-appellants there were briefs by *John Grindell* of *Grindell Law Offices, S.C.,* of Frederic.

For defendants-respondents there was a brief by *Donald J. Hanaway,* attorney general and *Robert A. Selk,* assistant attorney general, *Wisconsin Department of Justice,* of Madison.

For intervenor, Dorothy Sheehan, there was a brief by *Bitney Law Firm, Ltd.,* of Spooner.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. The primary issue is whether, under sec. 31.02(1), Stats., the Department of Natural Resources has the authority to order a riparian landowner at his own expense to reopen and maintain an artificial ditch outlet on private property in order to regulate a lake level. Because we conclude that it does not, we reverse.

The facts are stipulated. The appellants (Otte) and the intervenor, Dorothy Sheehan, are riparian landowners on Lang Lake, also known as Lower Loon Lake, which is a shallow eighty-five-acre seepage lake in Burnett County. Sometime in the early part of this century, an artificial outlet ditch eighty feet in length was dug on property now owned by Charles Otte. In the early 1950's, a portion of the ditch near the

lakeshore was filled. At the request of the town board, the ditch was later reopened sometime before May 8, 1956. The ditch has never been navigable.

On January 28, 1956, the Public Service Commission, which was then responsible for setting lake levels, received a complaint from a riparian landowner that the ditch was lowering the lake level. After investigating the complaint, the PSC determined that the lake level was satisfactory and no action was necessary unless the ditch was blocked or deepened in the future. The lake level was then 94.86 feet with respect to an assumed benchmark on site. In 1957, Otte purchased the property, including the ditch. In 1970, Otte desired to fill the ditch and requested a permit from the DNR. After receiving a letter from the DNR stating that no permit was required, Otte filled the ditch. Otte has done nothing further with the ditch since that time.

In October, 1984, Sheehan complained to the DNR that the filled ditch was causing flood damage to her property. In response, a water management specialist from the DNR inspected the ditch area and determined that the lake's water level was approximately two feet higher than that set in 1956 by the PSC as a reasonable maximum level. The DNR specialist also determined that the ordinary high water mark was very close to where it would be had the ditch never been constructed. Finally, he determined that the general public interest would probably best be served by the existing high water level because it would improve the fishery.

Nevertheless, the DNR, relying on sec. 31.02(1), ordered Otte at his own expense to restore the filled portion of the ditch to a condition similar to that which existed in 1956, to protect Sheehan's private

property. The restored ditch had to comply with detailed specifications.[1] The DNR also ordered Otte and his heirs or assigns to maintain the ditch as specified, and that any subsequent transfer of the ditch property shall be conditioned on compliance with its order. Furthermore, the DNR required that its order be recorded with the Burnett County Register of Deeds.

Otte petitioned the agency for a review of the order, pursuant to sec. 227.064, Stats. (1983–84), renumbered sec. 227.42, Stats. After a contested hearing, the DNR affirmed the order. On review to the circuit court, the order was again affirmed.

Section 31.02(1) provides in part that the DNR, in the interest of public rights in navigable waters or to promote safety and protect life, health, and property, may regulate and control the level and flow of water in all navigable waters.[2]

---

[1]The specifications required the restored ditch to have a bottom elevation of 95 feet with respect to the assumed benchmark on site. Also, it required the ditch to have a bottom width of approximately two feet and have side slopes of four feet vertical and one foot horizontal, or flatter.

[2]Section 31.02(1), Stats., provides:

Powers of department. (1) The department, in the interest of public rights in navigable waters or to promote safety and protect life, health and property may regulate and control the level and flow of water in all navigable waters and may erect, or may order and require bench marks to be erected, upon which shall be designated the maximum level of water that may be impounded and the lowest level of water that may be maintained by any dam heretofore or hereafter constructed and maintained and which will affect the level and flow of navigable waters; and may by order fix a level for any body of navigable water below which the same shall not be lowered except as provided in this chapter; and shall establish and maintain gauging stations upon

Otte does not dispute the DNR's authority to regulate and control the lake level. Rather, he disputes its authority under sec. 31.02(1) to order a property owner at his own expense to excavate and maintain a ditch on his private property in order to control the lake's level. Otte contends that the DNR's order constitutes an unconstitutional taking of property and denial of due process. Also, he contends that the DNR was required to follow the procedures under sec. 30.03(4)(a), Stats., before it could issue an order requiring a private property owner to excavate and maintain the outlet ditch.

Conversely, the DNR contends that Otte was subject to an order under sec. 31.02(1) because he purchased the property with the artificial ditch that prevented the lake from rising to a level causing property damage. The DNR also contends that it does not "take" or "condemn" Otte's property since the order merely requires the property to be rededicated to its historical use by returning it to the condition that existed when Otte purchased the property.

Since the facts are undisputed, the resolution of these issues presents questions of law. *First Nat'l Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977). Under sec. 227.57(5), Stats., these questions of law are always reviewable by the court. *American Motors Corp. v. LIRC,* 114 Wis. 2d 288, 293, 338 N.W.2d 518, 520 (Ct. App. 1983), *aff'd,* 119 Wis. 2d 706, 350 N.W.2d 120 (1984). The construction of a statute or the application of a statute to a

the various navigable waters of the state and shall take other steps necessary to determine and record the characteristics of such waters.

particular set of facts is a question of law. *Id.* Although we are not bound by the agency's interpretation, we generally accord due weight to the agency's experience, technical competence, and specialized knowledge. *Id.* "We hesitate to substitute our judgment for that of the agency on a question of law if there is a rational basis for the agency's interpretation and it does not conflict with the statute's legislative history, prior court decisions, or constitutional prohibitions." *Id.*

We first address Otte's contention that the DNR is required to comply with the procedural requirements of sec. 30.03(4)(a) before it may order a riparian landowner to excavate and maintain an outlet ditch on his property for purposes of regulating and controlling the lake level. We disagree. This section applies whenever there comes to the DNR's attention a possible violation of the statutes relating to navigable waters. Here, there is no alleged violation of any such statute and, consequently, sec. 30.03(4)(a) is inapplicable.

Otte concedes the DNR has the authority to regulate and control the lake's level because it is navigable water. Both Otte and the DNR agree, however, that because the ditch has never been navigable, the DNR has no control over the ditch as a navigable water.

The question, therefore, becomes whether under sec. 31.02(1), the DNR may order a private property owner at his own expense to excavate and indefinitely maintain a ditch on his property to aid the DNR in regulating and controlling the lake's level. Because the order's effect constitutes an unauthorized taking of private property, we conclude that it may not.

If permitted, the DNR's order would constitute a "taking" of Otte's property without statutory authority or compensation. Article I, sec. 13, of the Wisconsin Constitution provides that: "The property of no person shall be taken for public use without just compensation therefor." A "taking" can occur short of actual occupation by the government if the restriction deprives the owner of all, or substantially all, of the beneficial use of his property. *Howell Plaza, Inc. v. State Hwy. Comm'n,* 66 Wis. 2d 720, 726, 226 N.W.2d 185, 188 (1975). In determining whether there was a taking, we look not to the government's intent but, rather, to whether the impact on the property owner was to deprive him or her of substantially all beneficial use of the property or to render the land useless for all reasonable purposes. *Zinn v. State,* 112 Wis. 2d 417, 430, 334 N.W.2d 67, 73 (1983).

In our case, the effect of the DNR's order deprives Otte of substantially all beneficial use of this portion of his land. He can no longer use this land for any purpose other than as an outlet ditch for the lake. Nor is it a temporary deprivation since the DNR's order requires Otte and his heirs or assigns to maintain the ditch indefinitely as specified. The order further requires the recording of the order with the Burnett County Register of Deeds, which in effect encumbers the property indefinitely.

We are not persuaded by the DNR's argument that because Otte is merely required to restore the ditch to its condition as when he purchased it, there is no taking. The DNR does not contend that Otte violated any statute when he filled the ditch in 1970.[3]

---

[3]Section 30.122, Stats., provides in part:

Nor do they contend that Otte's filling the artificial ditch interfered with the lake's natural level. Consequently, for purposes of applying sec. 32.01(1), Otte is in no different position from a riparian landowner who never had an outlet ditch on his or her property.

Chapter 32, Stats., sets forth the procedure the government must follow in acquiring private property for public use. The DNR, except in specific circumstances not applicable here, lacks the power to condemn property. *See Zinn,* 112 Wis. 2d at 434, 334 N.W.2d at 75. Because the DNR's order constitutes a taking of Otte's property without statutory authority, the order is invalid. We refuse to expand sec. 32.01(1) to authorize the DNR to take a person's private property for the purpose of aiding it in regulating and controlling a lake's level.[4] Consequently, we reverse and remand the matter to the circuit court to enter a judgment setting aside the DNR order.

---

**Unauthorized structures.** All permanent alterations, deposits or structures affecting navigable waters, other than boathouses, which were constructed before December 9, 1977 and which did not require a permit at the time of construction, shall be presumed in conformity with the law, unless a written complaint is filed within 180 days of December 9, 1977.

The DNR does not contend that it ever filed a written complaint against Otte's filling the ditch on his property.

[4]We do not address the question of whether other property owners on the lake had a prescriptive right to require Otte to restore the ditch on the theory that the lower artificial lake level became the "natural" level and they made improvements to their property in reliance on the artificial level. This issue was never raised at the trial level nor on appeal. Also, because the DNR's order is so extensive as to constitute a taking, we do not address the issue of whether the DNR could order Otte to solely restore the ditch to its condition that existed when he purchased the property.

*By the Court.*—Judgment reversed and cause remanded with directions.