Bonnie **COOK**

v.

**STATE OF RHODE ISLAND, DEPARTMENT OF MENTAL HEALTH, RETARDATION AND HOSPITALS.**

Civ. A. No. 90–560–T.

United States District Court,
D. Rhode Island.

Feb. 19, 1992.

---

Lynette Labinger, Co-op. Atty., R.I. Affiliate, ACLU, Providence, RI, for plaintiff.

John L.P. Breguet, Cranston, RI, for defendant.

## MEMORANDUM AND ORDER

TORRES, District Judge.

Bonnie Cook ("Cook") seeks injunctive and declaratory relief and monetary damages from the Rhode Island Department of Mental Health, Retardation and Hospitals ("MHRH") for what she alleges was discrimination based on her obesity in violation of § 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794. This case is presently before the Court on MHRH's motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. That motion requires the Court to consider whether obesity is a "handicap" within the meaning of 29 U.S.C. § 794.

## BACKGROUND

The complaint alleges that, since sometime before 1978, Cook's weight has been at least one hundred pounds more than what is considered appropriate for her height, a condition known as "morbid obesity." From 1978 to 1986, Cook worked as an institutional attendant at the Ladd Center, a residential facility for the mentally disabled that is operated by MHRH. It is not clear why her employment terminated but, in 1988, she reapplied for a similar position and was accepted contingent upon satisfactorily completing a physical examination.

MHRH acknowledges that its examining physician refused to approve Cook's application unless she reduced her weight to something less than three hundred pounds. When Cook failed to satisfy that requirement, she was refused employment.

Cook contends that MHRH's action amounts to discrimination on the basis of a handicap in violation of 29 U.S.C. § 794 and several Rhode Island statutes pursuant to which she has asserted pendent state law claims. She seeks a declaratory judgment and an injunction requiring the MHRH to award her the next available position as an institutional attendant with applicable seniority, promotions and salary increases retroactive to November, 1988. In addition, she seeks back pay, compensatory damages and attorney's fees.

MHRH contends that the complaint fails to state a claim upon which relief can be granted because obesity is not a "handicap" within the meaning of the aforesaid statutes. Alternatively, MHRH argues that, even if obesity is a handicap, it made a reasonable accommodation by agreeing to hire Cook if she reduced her weight to less than three hundred pounds. MHRH also asserts that the complaint should be dismissed as "untimely."

## DISCUSSION

### I. Standard of Review

MHRH does not specify the rule on which it relies in seeking dismissal of the complaint. However, it is obvious from the tenor of MHRH's memorandum that the motion to dismiss is brought pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

A Rule 12(b)(6) motion to dismiss should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In passing on such a motion, the Court's function is not to make factual determinations. Rather, the Court must consider all well-pleaded allegations in the complaint to be true. *Pujol v. Shearson/American Express, Inc.*, 829 F.2d 1201, 1202 (1st Cir. 1987). If the allegations, when viewed in that light, are sufficient to state a cause of action, the motion to dismiss must be denied. *Knight v. Mills*, 836 F.2d 659, 664 (1st Cir. 1987).

### II. Timeliness

MHRH's argument that Cook's complaint is "untimely" requires little discussion. To the extent that the Court is able to decipher that argument, it appears to rest on the erroneous premise that 42 U.S.C. § 2000e–16 required Cook to commence this suit within thirty days after her complaint was denied by the State Office of Equal Opportunity. Accordingly, MHRH concludes that Cook's suit is barred because it was not initiated until more than two months after denial.

The flaw in that argument is that § 2000e–16 does not apply to Cook's claim. Cook's claim is brought pursuant to 29 U.S.C. § 794 which incorporates the remedies contained in Title VI of the Civil Rights Act of 1964. 29 U.S.C. § 794a(a)(2) (1988). Title 42 U.S.C. § 2000e–16, upon which MHRH relies, is part of Title VII of the Civil Rights Act.

Title VII includes a comprehensive array of remedies available to aggrieved individuals. As a precondition to bringing suit, it also requires compliance with an elaborate procedural process prescribing specific time limits for seeking redress. 42 U.S.C. § 2000e–16 (1988) (incorporating sections (f) through (k) of 42 U.S.C. § 2000e–5).

Unlike Title *VII*, the provisions of Title *VI* that are applicable to Cook's case provide for remedial action only by the agency disbursing federal funds. Title VI does not provide for redress to the individual who is the subject of the alleged discrimination. *See* 42 U.S.C. § 2000d–1 (1988). Consequently, the courts have recognized an implied private cause of action on the part of those individuals. *See Smith v. Barton,* 914 F.2d 1330, 1338 (9th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1991); *Doe v. Garrett,* 903 F.2d 1455, 1460 (11th Cir.1990), *cert. denied,* 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991).

■ Since Title VI does not include either the procedural process contained in Title VII or its concomitant time limits, the only time constraint applicable to claims under 29 U.S.C. § 794 is that set forth in the pertinent state statute of limitations governing causes of action most analogous to the claim being asserted. *See Andrews v. Consolidated Rail Corp.,* 831 F.2d 678, 683 (7th Cir.1987); *Bush v. Commonwealth Edison Co.,* 732 F.Supp. 895, 900 (N.D.Ill.1990); *Jones v. Frederick County Bd. of Educ.,* 689 F.Supp. 535, 538–39 (D.Md.1988).

In this case, MHRH has not addressed what statute that is. However, it appears that it would be R.I.Gen.Laws § 9–1–14 governing actions for personal injury. *See, Bush,* 732 F.Supp. at 900 (applying Illinois personal injury statute of limitations to § 794 case). If that is the case, Cook's suit was brought well within the three year period prescribed by that statute and, therefore, is "timely."

### III. *Obesity as a "Handicap"*

Section 504(a) of the Rehabilitation Act, 29 U.S.C. § 794(a), prohibits discrimination on the basis of "handicap" in connection with activities conducted by federal agencies or programs receiving federal funds. Specifically, it provides:

**(a) Promulgation of rules and regulations**

No *otherwise qualified* individual with *handicaps* in the United States, as defined in section 706(8) of this title, shall, *solely by reason of her or his handicap,* be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

29 U.S.C. § 794(a) (1988) (emphasis added).[1]

The determination as to whether obesity is a "handicap" must begin with the definition of "handicap" contained in § 706(8)(B). The relevant portion of that subsection states:

(B) Subject to subparagraphs (C) and (D), the term "individual with handicaps" means, for purposes of subchapters IV and V of this chapter [29 U.S.C. §§ 780–785, 790–794d], any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

29 U.S.C.A. § 706(8)(B) (West Supp.1991).

### A. *Obesity as an Actual "Handicap"*

MHRH concedes that obesity may lead to a number of incapacitating afflictions. Nevertheless, it contends that obesity, itself, is not a "physical impairment" that "substantially limits" a person's "major life activities."

■■ Unfortunately, the Rehabilitation Act does not define any of those terms.

---

1. Cook's complaint alleges that MHRH is a state agency receiving federal assistance. Consequently, its operation of the Ladd School would constitute a "program or activity" as that term is defined by 29 U.S.C. § 794(b).

Moreover, the legislative history of the Act fails to provide any clues as to precisely what Congress intended. Consequently, in seeking guidance regarding the meaning of those terms, the Court must, first, look to the regulations promulgated by the administrative agencies charged with immediate responsibility for implementing the law particularly since such regulations were subject to Congressional oversight under the statute. *See School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 279, 107 S.Ct. 1123, 1126, 94 L.Ed.2d.307 (1987) (citations omitted). The regulations adopted by the Department of Health and Human Services pursuant to 29 U.S.C. § 794 (the "DHHS Regulations") are particularly pertinent in this case because it is through that department that the Ladd Center receives its federal assistance. *See generally* 45 C.F.R. Pt. 84 (1989).

The DHHS Regulations attempt to define a physical impairment in two ways: first, by reference to the bodily systems affected and second, by providing an illustrative list of conditions and diseases regarded as impairments. Thus, the DHHS Regulations provide:

(i) "Physical or mental impairment" means (A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine....

45 C.F.R. § 84.3(j)(2)(i) (1989).

In addition, the appendix to the DHHS Regulations states:

Paragraph (j)(2)(i) [45 C.F.R. § 84.-3(j)(2)(1) ] further defines physical or mental impairments. The definition does not set forth a list of specific diseases and conditions that constitute physical or mental impairments because of the difficulty of ensuring the comprehensiveness of any such list. The term includes, however, such diseases and conditions as orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, and, as discussed below, drug addiction and alcoholism.

45 C.F.R. Pt. 84, App. A, Subpart A(3) at 346 (1989).

Neither section refers to either obesity or morbid obesity. Consequently, obesity cannot be classified as a physical impairment, unless it fits within the generic description of a physiological disorder or condition affecting one or more of the bodily systems enumerated in § 84.3(j)(2)(i). In order to make that determination, the Court necessarily would have to consider medical evidence regarding the nature and extent of obesity's effects on those bodily systems.

In addition, medical evidence would be required with respect to the etiology of obesity. Thus, to the extent that obesity, or Cook's form of obesity, is caused by systemic or metabolic factors and constitutes an immutable condition that she is powerless to control, it may be a physiological disorder qualifying as a handicap. *See Philadelphia Elec. v. Pennsylvania Human Relations Comm'n*, 68 Pa.Cmwlth. 212, 448 A.2d 701, 706–07 (1982) (morbid obesity may be but is not *per se* a handicap under Pennsylvania law); *State Div. of Human Rights v. Xerox Corp.*, 65 N.Y.2d 213, 491 N.Y.S.2d 106, 109–10, 480 N.E.2d 695, 698–99 (1985) (obesity is a disability under New York law). Conversely, to the extent that obesity is a transitory or self-imposed condition resulting from an individual's voluntary action or inaction, it would be neither a physiological disorder nor a handicap. *Tudyman v. United Airlines*, 608 F.Supp. 739, 746 (C.D.Cal.1984) (bodybuilder's weight in excess of maximum permitted for flight attendant does not constitute a handicap because self-imposed and voluntary); *Greene v. Union Pacific R.R. Co.*, 548 F.Supp. 3, 5 (W.D.Wash.1981) (morbid obesity not a handicap within meaning of Washington statute when condition was within plaintiff's control).

These are matters that cannot be resolved by way of a motion to dismiss under Rule 12(b)(6). To put it another way, at this juncture, the Court cannot say Cook will be unable to prove any set of facts establishing

that her obesity is a physical impairment within the meaning of 29 U.S.C. § 706(8).

■ A similar problem is encountered in seeking to determine whether obesity, or Cook's form of obesity, "substantially limits one or more ... major life activities." Once again, the Rehabilitation Act does not define those terms. The DHHS Regulations describe "major life activities" as follows:

> (ii) "Major life activities" means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and *working.*

45 C.F.R. § 84.3(j)(2)(ii) (1989) (emphasis added). Consequently, it is clear that, to the extent that a physical disability or impairment limits a person's ability to work or obtain employment, it interferes with a major life activity.

What is not so clear is how broadly the terms "employment" or "ability to work" should be construed or how severe a limitation must be before it is deemed "substantial." The Regulations provide no guidance on these points. Indeed, they expressly disclaim any attempt to explain what is meant by "substantially limits" saying:

> It should be emphasized that a physical or mental impairment does not constitute a handicap for purposes of section 504 [29 U.S.C. § 794] unless its severity is such that it results in a substantial limitation of one or more major life activities. Several comments observed the lack of any definition in the proposed regulation of the phrase "substantially limits." The Department does not believe that a definition of this term is possible at this time.

45 C.F.R. Pt. 84, App. A, Subpart A(3) at 346 (1989).

■ One thing that may be said is that a person is not deemed physically impaired or handicapped simply because that person is unable to perform one particular type of job requiring specific physical characteristics or skills.

> There is, however, no authority for the proposition that failure to qualify for a single job because of some impairment [i.e., obesity or being overweight] ... con-

stitutes being limited in a major life activity. The regulations define major life activity as, *inter alia* "working," 45 C.F.R. § 84.3(j)(2)(ii), but not "working at the specific job of plaintiff's choice."

. . . .

> [T]he inability to obtain a single job does not render one "handicapped."

*Tudyman v. United Airlines,* 608 F.Supp. at 745 (citations omitted).

■ By the same token, a physical condition or limitation is not considered an impairment or handicap unless it places an individual so far outside the norm as to make it impossible or unusually difficult for that individual to perform work that could be done by most other people. Thus, it has been recognized that:

> [a]ll persons, given their individual characteristics and capabilities, have inherent limitations on their general ability to achieve or to perform certain jobs. All persons have some mental or physical deviations from the norm. However, such inherent limitations or deviations from the norm do not automatically constitute handicaps. A handicap is a mental or physical disability or impairment that a person has in addition to his or her normal limitations that makes achievement not merely difficult, but unusually difficult, or that limits the capacity to work.

*American Motors Corp. v. Labor and Indus. Review Comm'n,* 119 Wis.2d 706, 350 N.W.2d 120, 123–24 (1984) (woman's diminutive stature not a handicap under Wisconsin's Fair Employment Act).

■ Whether or to what extent Cook's obesity limits her ability to "work" or to engage in other "major life activities" is not a matter that can be decided in connection with a motion to dismiss under Rule 12(b)(6).

**B.** *Obesity as a Perceived Handicap*

Even if it could be determined from the face of the complaint that Cook is not *actually* handicapped, Cook might still be able to prove that she was handicapped because that was how she was *perceived* by MHRH. As already noted, 29 U.S.C. § 706(8)(B)(iii) de-

fines "an individual with handicaps" to include one who is *"regarded* as having" a "physical or mental impairment which substantially limits one or more of such person's major life activities." 29 U.S.C.A. § 706(8)(B)(iii) (West Supp.1991) (emphasis added).

The report of the Senate Labor and Public Welfare Committee states that this definition applies to "a person with some kind of visible physical impairment which in fact does not substantially limit that person's functioning." S.Rep. No. 1297, 93rd Cong., 2d Sess. 4, *reprinted in* 1974 U.S.Code Cong. & Admin.News 6373, 6414. The rationale underlying the definition is that:

[s]uch an impairment might not diminish a person's physical or mental capabilities, but could nevertheless substantially limit that person's ability to work as a result of the negative reactions of others to the impairment.

*See Arline,* 480 U.S. at 283, 107 S.Ct. at 1128–29 (footnote omitted).

The DHHS Regulations echo that theme by providing:

(iv) "Is regarded as having an impairment" means (A) has a physical or mental impairment that does not substantially limit major life activities but that is treated by a recipient [of Federal financial assistance] as constituting such a limitation; (B) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (C) has none of the impairments defined in paragraph (j)(2)(i) of this section but is treated by a recipient [of Federal financial assistance] as having such an impairment.

45 C.F.R. § 84.3(j)(2)(iv) (1989).

The appendix to the DHHS Regulations further expands on this point by stating:

The third part of the statutory and regulatory definition of handicapped person includes any person who is regarded as having a physical or mental impairment that substantially limits one or more major life activities. It includes many persons who are ordinarily considered to be handicapped but who do not technically fall

within the first two parts of the statutory definition, such as persons with a limp. This part of the definition also includes some persons who might not ordinarily be considered handicapped, such as persons with disfiguring scars, as well as persons who have no physical or mental impairment but are treated by a recipient [of federal financial assistance] as if they were handicapped.

45 C.F.R. Pt. 84, App. A, Subpart A(3) at 346 (1989).

As the Supreme Court has observed:

By amending the definition of "handicapped individual" to include not only those who are actually physically impaired, but also those who are regarded as impaired and who, as a result, are substantially limited in a major life activity, Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment.

*Arline,* 480 U.S. at 284, 107 S.Ct. at 1129 (footnote omitted).

■■ Of course, that does not mean that an employer's belief that an individual is unqualified for a particular job because of a physical attribute or condition necessarily renders that individual "handicapped," or that the employer's failure to hire that individual constitutes handicap discrimination. The attribute or condition, as perceived by the employer, must be in the nature of a mental or physical impairment substantially limiting the capacity to work. *American Motors Corp. v. Labor and Indus. Review Comm'n,* 119 Wis.2d 706, 350 N.W.2d 120, 125 (1984).

■■ Nor does it mean that proof that a person was rejected for employment because of an actual or perceived handicap is sufficient to establish a claim for handicap discrimination. In order to prevail on such a claim, the claimant is required to demonstrate that she or he was "otherwise qualified" for the job. The Rehabilitation Act does not require employers to hire individuals who cannot satisfactorily perform a job merely because such inability stems from a handicap. 29 U.S.C. § 794(a) (1988) ("No otherwise qualified individual with handicaps

... shall, *solely by reason of her or his handicap,* ... be subjected to discrimination...." (emphasis added)); *see Bento v. I.T.O. Corp. of Rhode Island,* 599 F.Supp. 731, 744 (D.R.I.1984) (citations omitted). It does prohibit employers from refusing to hire individuals who are able to do the job simply because they are handicapped or because the employer perceives them as handicapped.

In this case, it appears that MHRH refused to hire Cook solely because of her obesity. Therefore, if the reason for that decision was that MHRH perceived obesity as a "handicap," Cook would be an "individual with handicaps" within the meaning of 29 U.S.C. § 794(a). Whether that was the basis for MHRH's decision is a matter of proof that cannot be determined via a motion to dismiss. Similarly, it is impossible to say at this stage whether Cook will be able to prove that she was "otherwise qualified" for the position of institutional attendant at the Ladd School.

IV. *Reasonable Accommodation*

MHRH's final argument is that it made a "reasonable accommodation" for any handicap Cook may have by agreeing to hire her if she reduced her weight to three hundred pounds or less. That argument rests on a misunderstanding of what constitutes reasonable accommodation.

A reasonable accommodation is a modification of the conditions under which a particular job must be performed so as to permit a handicapped person to perform it despite that person's handicap. *See Bento,* 599 F.Supp. at 745. In this case, there is no indication that MHRH made any such modification to accommodate Cook's obesity. Rather, what it did was require Cook to reduce or eliminate her alleged handicap in order to be hired. Therefore, there is no merit in MHRH's argument.

### CONCLUSION

For all the foregoing reasons, MHRH's motion to dismiss is denied.

IT IS SO ORDERED.