Jay V. BUSH, Plaintiff,

v.

COMMONWEALTH EDISON
COMPANY, Defendant.

No. 89 C 0652.

United States District Court,
N.D. Illinois, E.D.

Feb. 22, 1990.

Randall Schmidt, Mandell Legal Aid Clinic, Chicago, Ill., for plaintiff.

Jay V. Bush, Chicago, Ill., pro se.

Linzey D. Jones, Pamela B. Strobel, Jean F. Holloway, Sidley & Austin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The plaintiff, Jay Bush, alleges that Commonwealth Edison ("Edison") discriminated against him because of his race and physical handicap. He seeks recovery under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Rehabilitation Act, 29 U.S.C. § 794; and Illinois statutory and common law. Edison now moves to dismiss the claims brought under 42 U.S.C. § 1981 and the Rehabilitation Act. As we explain herein, we grant Edison's motion.

### Background

For the purposes of this motion to dismiss, we assume the truth of Bush's allegations. *Zinser v. Rose,* 868 F.2d 938, 939 (7th Cir.1989). In 1978, Edison hired Bush, a black male, as a garageman. He was promoted to the position of mechanic in August of 1980. In June, 1982, Bush suffered a work related injury to his right knee. Although this injury diminished the strength and stability of his knee, Bush was able to perform his duties as a mechanic. However, on July 25, 1985, one month after he filed a workers' compensation claim, Bush was demoted to a clerk's position in Edison's billing department on the pretext that he was physically unable to perform as a mechanic. This job paid less than the mechanic position. He received this demotion despite the fact that Edison did not demote white employees

who could not perform because of work related injuries.

In March, 1986, Bush's doctor gave him a medical release to return to his job as a mechanic. Edison refused to restore him to his former assignment. However, it allowed white employees who obtained medical releases to return to the positions they held before their injuries. Edison fired Bush in September of 1986. It claimed that the discharge was based on his total work record. However, the decision to fire Bush was actually made on the basis of his race and physical handicap.

### Discussion

Edison moves to dismiss two of Bush's claims. First, it maintains that the § 1981 claims should be dismissed on the authority of the Supreme Court's recent decision in *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Second, Edison argues that the Rehabilitation Act claim should be dismissed because it is time barred. We consider each of these arguments in turn.

### A. The § 1981 Claims.

Bush claims that Edison violated § 1981 when it demoted him, when it failed to promote him, and when it ultimately fired him. The statute provides that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

"By its plain terms, the relevant provision in § 1981 protects two rights: 'the same right ... to make ... contracts' and 'the same right ... to ... enforce contracts.'" *Patterson,* 109 S.Ct. at 2372.

■ As a threshold matter, we note that Bush's claims do not implicate the § 1981 right to enforce contracts. This protection extends only to conduct which impedes a citizen's access to the courts or other nonjudicial methods of enforcing contractual rights. There are no allegations in the complaint which suggest that Edison created any such impediment.

Therefore, if Bush's claims are actionable under § 1981, the challenged conduct must infringe the right to make contracts. In *Patterson v. McLean Credit Union,* the Supreme Court clearly delineated the scope of this right. The Court stated that,

[The right to make contracts] extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment. The statute prohibits, when based on race, the refusal to enter into a contract with· someone, as well as the offer to make a contract only on discriminatory terms. But the right to make contracts does not extend, as a matter of logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions.

*Id.* 109 S.Ct. at 2372–2373.

■ Applying *Patterson* to this case, the § 1981 claims can survive Edison's motion to dismiss only if Bush has alleged that Edison refused to enter into a contract with him, or offered to enter into a contract only on discriminatory terms. Conversely, the claims must be dismissed if the allegations pertain to conduct that arose after the formation of a contract with Edison. We dismiss the claims because the allegations of discharge, demotion and failure to promote involve conduct that took place after the creation of a contract with Edison.

Bush has failed to allege facts sufficient to bring his promotion claim within the ambit of § 1981. *Patterson* acknowledges that an employer's refusal to promote an employee may be actionable under § 1981 in certain limited circumstances. "[T]he question [of] whether a promotion claim is actionable under § 1981 depends on whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employ-

er." *Id.* 109 S.Ct. at 2377. "Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee is such a claim actionable under § 1981." *Id.*

*Patterson* gives little guidance as to what constitutes a "new and distinct" relationship, and no clear standard has evolved in the lower courts. *See Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1312 (7th Cir. 1989). However, for present purposes, we need not attempt to create such a standard. As alleged in the complaint, salary and job function are the only distinctions between the mechanic and clerk positions. Although one court has found such differences sufficient under *Patterson, Mallory v. Booth Refrigeration Supply Co., Inc.,* 882 F.2d 908, 910 (4th Cir.1989), we believe that this is far too expansive a reading of the opinion. Standing alone, these differences do not suggest a new and distinct relationship between Bush and Edison. *See Crader v. Concordia College,* 724 F.Supp. 558, 563 (N.D.Ill.1989) (increase in responsibility and authority insufficient to meet the *Patterson* standard); *Anderson v. U.P.S., Inc.,* 1989 WL 122307 (N.D.Ill. Oct. 6, 1989). Virtually every job change involves different duties and a different rate of pay; *Patterson* clearly did not intend every such claim to be actionable under § 1981.[1]

Bush contends that his § 1981 discharge claim is viable because, "it constitutes Defendant's refusal to make a contract with Plaintiff and involves a new and distinct employment relationship." (Pltf.Mem., p. 6). We disagree. An employer's decision to fire an employee is not the refusal to make a contract, but the termination of an existing contractual relationship. Edison's

discharge of Bush constitutes conduct after the contract relation had been established. While this conduct may be the basis for another cause of action, it is not actionable under § 1981. *Overby v. Chevron USA, Inc.,* 884 F.2d 470 (9th Cir.1989) (Court held that a discharge claim involved postformation conduct, and was not actionable after *Patterson*); *Hall v. County of Cook, State of Ill.,* 719 F.Supp. 721, 723 (N.D.Ill.1989) (discharge claim not actionable under § 1981); *Jones v. Alltech Assoc., Inc.,* No. 85 C 10345, slip op. at p. 11, 1989 WL 105234 (N.D.Ill. Sept. 1, 1989).[2]

Similarly, Bush's allegation that Edison violated § 1981 when it demoted him to billing clerk also runs afoul of *Patterson;* the claim rests on postformation conduct excluded from § 1981 liability. Anticipating the fatal effect of *Patterson,* Bush attempts to analogize his demotion claim to an actionable promotion claim involving a "new and distinct relation" between employer and employee. According to Bush, his demotion claim is viable because it created a new and distinct relationship with Edison and constituted an offer to make a contract on discriminatory terms.

Although a demotion and promotion may be analogous in some regards, any similarities are unrelated to the characteristics that make some promotions actionable under § 1981. In actionable promotion cases, the new position sought by an employee represents an opportunity to conclude a prior contractual relationship and create an entirely new contract. In this situation, § 1981 protects a citizen's right to make this new contract free from the encumbrance of racial discrimination. Thus, in a promotion case, the protection of § 1981 is

---

**1.** Because Bush filed his complaint only one day after *Patterson* was decided, he seeks leave to amend his complaint in the event that we dismiss his § 1981 claim. Because a narrow category of promotion claims are actionable after *Patterson,* we grant leave to amend the claim that Edison's refusal to promote violated § 1981.

**2.** *See also Jones v. Air Freight System, Inc.,* slip op., No. 89 C 7105, 1990 WL 7178 (N.D.Ill.1990) (collecting Northern District of Illinois cases in which § 1981 discharge claims were dismissed

on the authority of *Patterson* ); *White v. Federal Express Corp.,* 729 F.Supp. 1536 (E.D.Va.1990) (Court dismissed § 1981 claim because discharge claim involved postformation conduct, not cognizable after *Patterson* ); *Joseph v. Zachary Manor Nursing Home,* 729 F.Supp. 41 (M.D. La.1990) (same); *Gregory v. Harris–Teeter Supermarkets, Inc.,* 728 F.Supp. 1259 (W.D.N.C. 1990) (same); *Greggs v. Hillman Distributing Co.,* 719 F.Supp. 552 (S.D.Tex.1989) (same), *cf. Padilla v. United Air Lines,* 716 F.Supp. 485 (D.Colo.1989).

focused on eliminating discrimination with regard to the new contract; the old contract is not a point of concern.

In a demotion case, however, the source of discrimination is entirely different. Bush claims that Edison discriminated when it removed him from his position as mechanic and placed him as a clerk in the billing department. The essence of his § 1981 claim is that Edison discriminated on the basis of race when it refused to maintain the contract under which Bush was employed as a mechanic. Thus, the objectionable conduct giving rise to the claim of discrimination is not the creation of a new contract, but the termination of the existing contract. However, the termination of an existing contract constitutes postformation conduct, which is excluded from § 1981 liability. While a new contractual relationship may have arisen after the demotion, this new contract is not the source of the § 1981 claim. Therefore, Bush's demotion claim rests on conduct which is not actionable after *Patterson*.[3]

■ Bush argues that even if we find *Patterson* applicable to the alleged facts, we should not dismiss his § 1981 claims. Bush contends that we should deny Edison's motion because *Patterson* cannot be applied retroactively. We reject this argument.

"As a rule, judicial decisions apply 'retroactively.' " *Solem v. Stumes*, 465 U.S. 638, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984) (citation omitted). However, there are exceptions to this general rule. The analysis of whether a particular decision should be applied retroactively is governed by three factors specified in *Chevron Oil Company v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). First, the decision at issue must overrule clear past precedent or establish a new principle of law. Second, we must determine whether retroactive operation would further the purpose and effect of the law in question, or whether retroactivity would retard these goals. Finally, we must determine whether retroactive application would produce equitable or inequitable results.

Although *Patterson* did not explicitly overrule any prior precedent, it clearly narrowed the range of conduct that is actionable under § 1981. Moreover, it eliminated a § 1981 cause of action for conduct that had been previously recognized as actionable by the Seventh Circuit. *See e.g., Williamson v. Handy Button Machine Co.*, 817 F.2d 1290 (7th Cir.1987). Therefore, we find that the first *Chevron* factor does not favor applying *Patterson* retroactively.

However, we find that the second *Chevron* factor supports retroactivity. Bush argues that applying *Patterson* to this case would undermine the congressional policy to eradicate discrimination in employment. But this argument is more of an attack on the substantive content of the *Patterson* opinion than an argument concerning retroactive application. Moreover, retroactive application would not hamper this congressional policy. As the Court explained in *Patterson*, the conduct removed from § 1981 liability is separately actionable under Title VII. Thus, an employment discrimination plaintiff still has a vehicle through which this policy may be furthered.

Finally, we find that the equities of this case do not mandate non-retroactivity. Undoubtedly, *Patterson* removes a remedy which existed at the time Bush initiated this action. However, any inequity arising from these circumstances would be outweighed by the inequity of imposing liability on Edison for conduct which the Supreme Court has found to be outside the scope of the statute. Furthermore, because Bush has a remedy under Title VII for the challenged conduct, concerns of inequity are reduced.

---

3. Our conclusion that the demotion of Bush is postformation conduct, not actionable under § 1981, is buttressed by the opinions of several courts that have reached the identical conclusion. *See Alexander v. New York Medical College*, 721 F.Supp. 587, 588 (S.D.N.Y.1989) (A demotion involves postformation conduct); *Williams v. National R.R. Passenger Corp.*, 716 F.Supp. 49, 51 (D.D.C.1989) (same); *Jordan v. U.S. West Direct Co.*, 716 F.Supp. 1366, 1368 (D.Colo.1989) (same); *Dangerfield v. The Mission Press*, slip op., No. 88 C 7199, 1989 WL 88199 (N.D.Ill., July 28, 1989) (same).

Balancing the three *Chevron* factors, we find that the presumption in favor of retroactivity has not been rebutted. The fact that *Patterson* overruled prior precedent is outweighed by the absence of inequity and damage to congressional policy. Accordingly, we find that *Patterson* should be applied retroactively, and that the decision reaches Bush's claims. *See e.g., Brackshaw v. Miles,* 723 F.Supp. 60 (N.D.Ill.1989) (*Patterson* should be applied retroactively); *Carroll v. General Acc. Ins. Co. of America,* 891 F.2d 1174, 1176 (5th Cir.1990) (same); *Jordan v. U.S. West Direct Co.,* 716 F.Supp. 1366, 1368 (D.Colo.1989) (same). Accordingly, we grant Edison's motion to dismiss the § 1981 claims.

### B. The Rehabilitation Act Claim.

■ Edison moves to dismiss Bush's claim under the Rehabilitation Act, 29 U.S.C. § 794, on the ground that it is time barred. According to Edison, the applicable statute of limitations is two years. Under a two year limitations period, the claim would be barred because Bush filed the action approximately two years and three months after the latest possible date a violation could have occurred.[4] However, Bush maintains that the applicable statute of limitations provides for a five year limitations period, and that we should deny Edison's motion.

The Rehabilitation Act, 29 U.S.C. § 794, contains no limitations provision. When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt, as federal law, the analogous statute of limitations from the state in which the federal court sits. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985); *Andrews v. Consolidated Rail Corp.,* 831 F.2d 678, 683 (7th Cir.1987).

Neither the Supreme Court nor the Seventh Circuit has determined a specific state statute of limitations that is analogous to the Rehabilitation Act. However, both courts have held that discrimination claims are most analogous to personal injury claims under state law, and have applied the corresponding state statute of limitations for personal injuries. *See e.g., Goodman v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987); *Wilson v. Garcia,* 105 S.Ct. at 1947; *Kalimara v. Illinois Dept. of Corrections,* 879 F.2d 276 (7th Cir.1989). Because the Rehabilitation Act is a statute which proscribes discrimination, we find that the applicable statute of limitations should be the Illinois statute of limitations for personal injury actions. This statute, Ill.Rev.Stat., ch. 110, ¶ 13–202, provides a two year limitations period.

We find no merit in Bush's contention that a five year statute of limitations should be applied. Bush contends that we should apply the Illinois statute of limitations for contracts, which provides for a five year period. Bush argues that this statute is analogous because his claim arises out of an employment relationship, which is contractual. However, in determining the appropriate limitations period, the inquiry centers on the nature of the remedy sought, rather than the factual basis for the plaintiff's claim. The Rehabilitation Act protects those who have suffered discrimination because of a physical handicap. A contractual relationship between the plaintiff and defendant is not an element of the claim. Therefore, we find that the statute of limitations for contract actions is not analogous to the Rehabilitation Act. *See, Andrews v. Consolidated Rail Corp.,* 831 F.2d 678, 683 (7th Cir.1987) (Court applied an Indiana statute of limitations that explicitly excluded contract actions to Rehabilitation Act claim).

■ Bush argues that if we determine that a two year statute of limitations is applicable to Rehabilitation Act claims, we should not apply this rule retroactively to bar his claim. We disagree. As we observed earlier, the three factor analysis of *Chevron Oil Co. v. Huson,* 92 S.Ct. 349, governs the retroactivity inquiry. In *Goodman v. Lukens Steel,* 107 S.Ct. at

---

**4.** Bush was discharged on September 23, 1986. He filed his original complaint on January 25, 1989.

2617, the Supreme Court discussed the application of *Chevron* to a decision involving a statute of limitations. The Court explained that a decision specifying the applicable statute of limitations should not be applied retroactively if the decision overrules clear precedent on which the plaintiff was entitled to rely, if "the new limitations period had been occasioned by a change in the substantive law the purpose of which would not be served by retroactivity," and if retroactive application would be inequitable. *Id.*

The *Chevron Oil* factors do not militate against retroactive application in the present case. First, there was no clearly established precedent on which Bush was entitled to rely. At the time he filed his claim, neither the Seventh Circuit nor the Supreme Court had specified the applicable limitations period. In similar circumstances, the Supreme Court has not hesitated to apply its decision retroactively. In *Goodman,* 107 S.Ct. 2622, prior to the Court's decision, there was no clear statute of limitations for § 1981 claims. The Court rejected the plaintiff's plea for non-retroactivity, stating that "there had been no authoritative specification of which statute of limitations applied to an employee's § 1981 claim, and hence no clear precedent on which petitioners could have relied...." *Id.*[5] Applying the Court's reasoning in *Goodman* to this case, we find that the first *Chevron* factor supports retroactivity.

The second and third *Chevron* factors also favor retroactivity. The limitations period that we apply to Bush's claim was not "occasioned by change in the substantive law the purpose of which would not be served by retroactivity." *Id.* 107 S.Ct. at 2621. Finally, the equities of the case do not favor Bush; he is charged with knowledge of the unsettled nature of the law at the time he filed the complaint. *Id.* at 2622.

Because none of the *Chevron* factors hinder retroactive application of our deci-

sion, we apply the two year statute of limitations to Bush's claim. Because he filed his action more than two years after he was terminated, his claim is time barred. Accordingly, we grant Edison's motion to dismiss this claim.

<div align="center">Conclusion</div>

For the reasons given above, we grant Edison's motion to dismiss the § 1981 claim and the Rehabilitation Act claim. Any amendment to the complaint is to be filed on or before March 16, 1990. It is so ordered.

</div>

---

**5.** Bush cites *Anton v. Lehpamer,* 787 F.2d 1141 (7th Cir.1986) and *Smith v. Firestone Tire & Rubber,* 875 F.2d 1325 (7th Cir.1989) in favor of his argument that we should not apply our decision retroactively. However, these decisions both involved the retroactive application of a new limitations period that overruled clear precedent. Thus, both are distinguishable from the present case, in which there is no existing clear precedent.