[No. S028230. Sept. 2, 1993.]

TONI LINDA CASSISTA, Plaintiff and Appellant, v.
COMMUNITY FOODS, INC., et al., Defendants and Respondents.

## COUNSEL

Robins, Kaplan, Miller & Ciresi and Stefanie M. Brown for Plaintiff and Appellant.

Joseph Posner, Pauline T. Kim, Jo Anne Frankfurt, John M. True III, Steven C. Owyang, Prudence Poppink, James F. Miller, Jr., Quackenbush & Quackenbush and William C. Quackenbush as Amici Curiae on behalf of Plaintiff and Appellant.

Grunsky, Ebey, Farrar & Howell, Frederick H. Ebey and Leslie J. Karst for Defendants and Respondents.

Paul, Hastings, Janofsky & Walker, Paul Grossman, Brobeck, Phleger & Harrison, Cecily A. Waterman, Thomas M. Peterson, Karen H. Peteros and Lucy C. Hodder as Amici Curiae on behalf of Defendants and Respondents.

Brad Seligman as Amicus Curiae.

## OPINION

ARABIAN, J.—We granted review to consider whether the California Fair Employment and Housing Act (FEHA or Act) (Gov. Code, § 12900 et seq.) prohibits employment discrimination on the basis of a person's weight.[1] We conclude that weight may qualify as a protected "handicap" or "disability" within the meaning of the FEHA if medical evidence demonstrates that it results from a physiological condition affecting one or more of the basic bodily systems and limits a major life activity. Because the plaintiff here adduced no evidence of this kind, we conclude that she failed to establish a prima facie case of employment discrimination.

[1]All further statutory references are to the Government Code unless otherwise noted.

## I. FACTS

In the summer of 1987, Toni Linda Cassista (plaintiff) applied for one of three openings at Community Foods, a health food store in the City of Santa Cruz. Founded as a neighborhood collective in the 1970's, Community Foods normally employed 16 to 17 people. The duties to be performed by the prospective employees included running the cash register, stocking 35- to 50-pound bags of grain, carrying 50-pound boxes of produce, retrieving groceries from the warehouse, changing 55-gallon drums of honey, and carrying large crates of milk. To fill the vacancies, Community Foods sought people with grocery store, retail clerk, cashier and stocking experience. New employees could eventually become members of the collective with management and ownership interests.

Plaintiff is five feet four inches tall and, at the time she applied to Community Foods, weighed three hundred and five pounds. She had previously been employed in several restaurants, managed a sandwich shop and worked as an aide in nursing homes. Plaintiff heard about the openings at Community Foods though a friend who worked there; she was interested in the job because she believed that the collective shared her "political awareness of issues and consciousness and concerns regarding the community and the environment . . . ."

The hiring process at Community Foods involved two steps. First, the applicant was interviewed by one or two members of the collective; next, those applicants who were not eliminated after the initial screening were called back for a more in-depth interview with the hiring committee. Plaintiff was one of eight applicants invited for a second interview.

Plaintiff's interview lasted approximately 30 minutes and covered the job requirements and her previous experience. Toward the end of the interview, she was asked if she had any physical limitations which would interfere with her ability to do the job. She replied that she did not. Plaintiff subsequently learned that the positions had been filled by three of the other applicants.

Several weeks after her interview with the committee, plaintiff learned of another opening at Community Foods. She immediately contacted Will Hildeburn, Community Foods's personnel coordinator, and asked that she be considered for the position. Hildeburn agreed to resubmit her application. Later, when she failed to hear from the committee, plaintiff again called Hildeburn and was informed that she had not been selected for the job.

Plaintiff asked Hildeburn what she might do to improve her chances for future openings. Hildeburn replied that they had hired people with more

experience. He also admitted telling plaintiff that "there was some concern about your weight." Plaintiff testified that Hildeburn's response was more explicit, to the effect that "members were concerned that you couldn't physically do the work due to your weight." She denied that Hildeburn referred to plaintiff's lack of experience as the basis for the committee's hiring decision.

Upset by her conversation with Hildeburn, plaintiff wrote to Community Foods about the matter. In response, Community Foods arranged a meeting with plaintiff to explain their decision and discuss her concerns. At the meeting, Hildeburn apologized to plaintiff for hurting her feelings and various members of the collective discussed their views about weight and job performance. One stated that her own weight fluctuated and observed that when she was heavier "at the end of the day . . . my feet hurt and my lower back usually hurts, because my stomach is, you know, pulling my back." The same member testified, however, that plaintiff's weight played no role in the collective's hiring decision. Another member recalled that when she was pregnant it became more difficult to climb ladders and stock aisles, and observed that "physical attributes have to be a part of the decision-making process . . . ." She too testified, however, that plaintiff's weight had no effect on the hiring decision.

Dissatisfied with the results of the meeting, plaintiff filed a complaint with the Department of Fair Employment and Housing (Department), alleging discrimination on the basis of her weight. Shortly thereafter, Community Foods offered plaintiff a position with the store. She refused the offer, however, because she did not believe the collective had adequately "educated" itself about the concerns of overweight people. After the Department determined not to file a complaint in the matter, plaintiff filed suit against Community Foods and Will Hildeburn alleging that she was denied employment in violation of the FEHA "in that [they] regarded her as having a physical handicap, i.e., too much weight."[2] Community Foods answered the complaint and denied its allegations.

The matter was tried before a jury. In addition to plaintiff, who recounted her experiences during the hiring process, Will Hildeburn testified that he had been concerned initially about plaintiff's physical ability to maintain the "pace" necessary for the job; his concerns were alleviated, however, by another member who stated that "large people can work as fast as anybody else." Hildeburn also conceded asking a friend shortly before the meeting with plaintiff, "If she had a 300-pound worker and 150-pound worker, how would she decide who to pick." Hildeburn denied, however, that plaintiff's

---

[2]For convenience, defendants will be referred to collectively as Community Foods.

weight was a factor in the committee's selection. A friend of plaintiff's also testified to the physical and emotional distress which plaintiff experienced after the meeting with Community Foods.

At the conclusion of plaintiff's case, Community Foods moved for a nonsuit on the ground that plaintiff had failed to establish she was a handicapped individual within the meaning of the FEHA. The trial court denied the motion.[3] Thereafter, three members of the collective (Will Hildeburn, Deborah Walsh and Elvie Moreno) testified for the defense that plaintiff's weight had played no role in the store's hiring decision. In addition, a safety engineer, Dr. Robert Liptai, testified about the health and safety ramifications of employing a 305-pound person at a store such as Community Foods. Liptai stated that the store would constitute a hazardous workplace for an individual such as plaintiff because of the narrow aisles and the danger that stepstools and ladders would not support her weight.

At the conclusion of the evidence, the trial court instructed the jury, inter alia, that plaintiff was required to prove that "but for plaintiff's handicap she would have been hired by defendant . . . ." The jury returned a unanimous verdict in favor of Community Foods.

The Court of Appeal reversed the judgment. The court held: (1) the evidence established that Community Foods considered plaintiff's weight to be a physical handicap as that term is defined under the FEHA, and (2) the trial court erred in instructing the jury that plaintiff was required to prove that but for her weight, she would have been hired. Rather, the court held that once plaintiff adduced evidence her weight played a part in the employer's decision, the latter must demonstrate it would have made the same decision even if weight had not been considered. Concluding that the instructional error was prejudicial, the Court of Appeal remanded for a new trial.

We granted review to consider whether, on the record evidence, plaintiff had established a prima facie case of handicap discrimination within the meaning of the FEHA.[4]

---

[3]Counsel for Community Foods argued that plaintiff had adduced "absolutely no testimony, medical, competent or otherwise, to establish that [plaintiff's weight] is a physical handicap or a perceived physical handicap." Plaintiff's counsel responded that "the physical condition we are talking about here is [plaintiff] being fat." The trial court appeared to be chagrined that Community Foods had not raised the issue earlier in a motion for summary judgment or judgment on the pleadings, observing that "the defense was remiss . . . this case should have never gotten this far. But it has gotten this far and the Court's attitude is to ride it out with no resolution on the defense side either . . . ." Accordingly, the trial court denied the motion.

[4]For obvious reasons, plaintiff did not appeal the denial of Community Foods' motion for nonsuit based on plaintiff's failure to demonstrate her weight was a physical handicap within

## II. DISCUSSION

### A. *Physical Handicap*

#### 1. *Background*

It is important to emphasize at the outset the limited nature of our inquiry. We do not intend, nor indeed are we at liberty, to define "physical handicap" in terms we believe to be morally just or socially desirable. Our task, rather, is to determine the boundaries of that provision which the Legislature intended. In this endeavor, we are constrained to begin with the statutory text, assuming that the Legislature chose its words carefully and assigned them their usual and ordinary meaning. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

In 1973, the Legislature amended Labor Code section 1420, the predecessor to section 12940 of the FEHA, to make "physical handicap" one of the bases on which employment discrimination was forbidden. (Stats. 1973, ch. 1189, § 6, p. 2501.)[5] At the same time, the Legislature adopted a definition of "physical handicap" which provided as follows: " 'Physical handicap' includes impairment of sight, hearing, or speech, or impairment of physical ability because of amputation or loss of function or coordination, or any other health impairment which requires special education or related services." (Stats. 1973, ch. 1189, § 3, p. 2499; now § 12926, subd. (h).)[6]

By its plain terms, therefore, the statute set forth three general categories of "physical handicap": (1) impairment of sight, hearing or speech; (2) impairment of physical ability because of amputation or loss of function or coordination; and (3) any other health impairment that requires special education or related services. The first category obviously concerned certain

the meaning of the FEHA. In resolving the burden of proof issue, however, the Court of Appeal was compelled to consider whether plaintiff had established a prima facie case of discrimination, i.e., whether overweight persons fell within the class protected by the Act, and whether Community Foods had discriminated on that basis. In its petition for review, Community Foods specifically challenged the Court of Appeal's determination that plaintiff's weight qualified as a "physical handicap" under the FEHA, and the point was briefed by both parties. Accordingly, the issue is properly before this court.

[5]The amendment provided an exception where the employee, "because of his [or her] physical handicap, is unable to perform his [or her] duties, or . . . cannot perform [those] duties in a manner which would not endanger his [or her] health or safety or the health and safety of others." (*Ibid.*; see now § 12940, subd. (a).)

[6]As discussed more fully below, the Legislature recently amended the statute to substitute the term "physical disability" for "physical handicap," and defined the former in terms consistent with the federal Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.). (Stats. 1992, ch. 913, § 21.3, No. 6 Deering's Adv. Legis. Service pp. 3861-3862.)

sensory deprivations, such as blindness or impaired vision, hearing loss and speech impediments. The third category, unlike the first two, referred not to a specific group of ailments but to a class of handicapped individuals statutorily entitled to special education programs and services. (See former Cal. Admin. Code, tit. 2, div. 4, § 7293.6, subd. (f); now Cal. Code Regs., tit. 2, § 7293.6, subd. (f).)

The second category, although less explicit, was similarly limited. "Amputation," "loss of function" and "loss of coordination" all share a common element relating to the body's basic motor abilities. "Amputation" obviously refers to the removal of a limb or appendage (Webster's New Internat. Dict. (3d ed. 1961) p. 74); "function" in a physiological sense means simply "bodily . . . action." (*id.* at p. 920); and "coordination" relates generally to the "functioning of [body] parts in cooperation and normal sequence." (*Id.* at p. 502.) Thus, impairment of physical "ability," i.e., the "power to perform" (*id.* at p. 3) through amputation, loss of function or coordination, applies essentially to any disabling condition caused by the removal or loss of use of, or lack of control over, the body's limbs, joints and extremities.

### 2. *American National*

Notwithstanding the relatively plain statutory language, a majority of this court, in *American National Ins. Co.* v. *Fair Employment & Housing Com.* (1982) 32 Cal.3d 603 [186 Cal.Rptr. 345 [651 P.2d 1151] (*American National*), held that "handicap" must be construed as coextensive with its dictionary definition, to wit, " 'a disadvantage that makes achievement unusually difficult.' " (*Id.* at p. 609, quoting Webster's New Internat. Dict. (3d ed. 1961) p. 1027.) Applying this broad construction, the majority held that high blood pressure constituted a "handicap" within the meaning of the FEHA.

As pointed out by Justice Mosk in dissent, the foregoing construction virtually ignored not only the statutory language, but also the pertinent legislative history. The original Assembly bill defined "physical handicap" to include "hardness of hearing, deafness, speech impairment, visual handicap, *being crippled*, or any other health impairment which requires special education and related services." (Assem. Bill No. 1126 (1973-1974 Reg. Sess.), italics added.) Although the bill was subsequently amended to replace the outdated phrase "being crippled" with the longer reference to "amputation or loss of function or coordination," it does not appear that the Legislature intended any significant change of substance. As Justice Mosk observed, "The phrase was evidently outdated, and prior to final passage it was amended into its present form. Yet in its old-fashioned way it did express the Legislature's intent: in ordinary usage and common understanding, to be

'crippled' means to suffer from impaired physical mobility because of the total or partial loss of use of one or more limbs, extremities, or major joints. In most cases such impairment results when the limb is missing (e.g., because of birth defect or amputation), or when the limb is intact but the person cannot move it because of paralysis caused by disease (e.g., polio, multiple sclerosis, muscular dystrophy, or stroke) or trauma (e.g., paraplegia or quadriplegia) or because of immobility of the joint (e.g., degenerative arthritis), or when the limb is movable but the person cannot always control or coordinate its motions (e.g., because of cerebral palsy, epilepsy, or Parkinson's disease). [¶] In substituting the present definition for the phrase 'being crippled,' the Legislature merely restated this traditional meaning in contemporary words." (*American National, supra,* 32 Cal.3d at pp. 613-614.)[7]

### 3. *The 1992 Amendments*[8]

In 1992, the Legislature enacted a sweeping amendment to section 12926, completely rewriting the law of handicap discrimination. Effective January 1, 1993, "physical disability" has replaced the phrase "physical handicap," and the former is now defined as including, but not limited to, "all of the following: (1) Having any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that does both of the following: [¶] (A) Affects one or more of the following body systems: neurological, immunological, musculoskeletal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine. [¶] (B) Limits an individual's ability to participate in major life activities. [¶] (2) Any other health impairment not described in paragraph (1) that requires special education or related services. [¶] (3) Being regarded as having had a disease, disorder, condition, cosmetic disfigurement, anatomical loss, or health impairment described in paragraph

---

[7]Other aspects of the legislative history also suggest that the Legislature contemplated a more narrow definition of "physical handicap." For example, a competing bill introduced in the same legislative session by Senator Roberti (Sen. Bill No. 1045 (1973-1974 Reg. Sess.)) would have prohibited employment discrimination against the "physically or mentally handicapped," which it defined in somewhat circular fashion as a "handicap unrelated to one's ability to perform jobs or positions available to him for hire or promotion." In effect, the Roberti bill provided *no* limiting definition of "handicap," leaving the door open to a potentially much broader range of impairments subject to the Act. In this respect, it was similar to several other state laws then in effect (e.g., Wisconsin's and Illinois's) which also lacked a definition of "handicap" and thus virtually invited a broad judicial interpretation. (See *Advocates for Handicapped* v. *Sears, Roebuck & Co.* (1978) 67 Ill.App.3d 512 [385 N.E.2d 39, 42-42]; *Chicago, M., St. P. & P.R. Co.* v. *State, Dept. of I., L. & H. R.* (1974) 62 Wis.2d 392 [215 N.W.2d 443, 446].) The Legislature's adoption of the more limited Assembly bill instead of its Senate rival tends to undermine the majority's broad construction of "handicap" in *American National, supra,* 32 Cal.3d 603.

[8]Because neither party raised the 1992 amendment to section 12926 or its possible effect on this litigation, we solicited and received supplemental briefing on the matter.

(1) or (2). [¶] (4) Being regarded as having, or having had, a disease, disorder, condition, cosmetic disfigurement, anatomical loss, or health impairment that has no present disabling effect but may become a physical disability as described in paragraph (1) or (2)." (Gov. Code, § 12926, subd. (k), enacted by Stats. 1992, ch. 913, § 21.3.)[9]

Thus, to qualify as physically "disabled" under the new statute the claimant must have, or be perceived as having, a "physiological" disorder that affects one or more of the basic bodily "systems" and limits the claimant's ability "to participate in major life activities."

In an apparent effort to maintain continuity with the former law, the Legislature, in addition to adopting the foregoing definition of "physical disability," also provided as follows: "It is the intent of the Legislature that the definition of 'physical disability' in this subdivision shall have the *same meaning* as the term 'physical handicap' formerly defined by this subdivision and construed in *American National Ins. Co.* v. *Fair Employment & Housing Com.*, 32 Cal.3d 603. . . ." (§ 12926, subd. (k), italics added.)

This express reference to *American National, supra,* 32 Cal.3d 603, suggests that the Legislature intended to avoid the creation of two standards for discrimination claims, depending upon whether the cause of action arose before or after the effective date of the amendment. Accordingly, the amendment, although well short of an express endorsement of the majority's reasoning in *American National, supra,* 32 Cal.3d 603, nevertheless imparts a clear legislative desire to maintain continuity in the law. Whatever the infirmities in *American National,* therefore, a due regard to the Legislature's mandate for consistency militates against overruling that decision. The Legislature has decreed, in effect, that the current and former versions of section 12926 should be harmonized. Therefore, although the instant matter arose under and is governed by the former law, we shall analyze plaintiff's claim with that legislative mandate in mind.

### 4. *The Old Law and the New*

In point of fact, the current and former law are remarkably consistent. Indeed, the definition of "physical disability" adopted by the Legislature in 1992 has been effectively controlling FEHA claims in California since 1980. In that year, the Fair Employment and Housing Commission first adopted a

---

[9]The 1992 amendments also included, for the first time, "mental disability" among the list of prohibited employment criteria. (Stats. 1992, ch. 913, §§ 19, 23, No. 6 Deering's Adv. Legis. Service, pp. 3853, 3863.)

regulation defining "handicapped individual" in terms substantially similar to the recent amendment. That regulation, which has not been significantly amended, describes such an individual as one who "(1) Has a physical handicap which *substantially limits one or more major life activities*; [¶] (2) Has a record of such a physical handicap; or [¶] (3) Is regarded as having such a physical handicap." (See now Cal. Code Regs., tit. 2, § 7293.6, subd. (i).) In addition, the regulation interprets "impairment of physical ability due to loss of function" as "Any *physiological* disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following *body systems*: neurological, musculoskeletal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin and endocrine." (See now Cal. Code Regs., tit. 2, § 7293.6, subd. (d), italics added.)

The obvious similarity between the 1980 regulation and the 1992 statutory amendment is not coincidental. Both derive from the same source, the federal Rehabilitation Act of 1973 (29 U.S.C. § 701 et seq.) (Rehabilitation Act), which prohibits handicap discrimination by federal contractors and recipients of federal assistance.[10] Over the last two decades, many states have enacted statutes or, as in California, regulations which track the federal statute. (See O'Connor, *Defining "Handicap" for Purposes of Employment Discrimination* (1988) 30 Ariz. L.Rev. 633, 649-650 [hereafter O'Connor].) The Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.) (ADA), which substantially broadens the scope of federal protection of the disabled, also adopts the Rehabilitation Act definition of "handicap" (42 U.S.C. § 12102; 29 C.F.R. § 1630.2(g) (1992)). The 1992 amendment to section 12926 is modeled, in turn, on the ADA. (§ 12926, subd. (k).)

The result is that our statute has finally caught up with its implementing regulation; the new definition of "disability" in section 12926, subdivision (k), and the long-standing interpretation of "handicap" in the California Code of Regulations (Cal. Code Regs., tit. 2, § 7293.6) are in harmony. Each requires an actual or perceived physiological disorder, disease, condition, cosmetic disfigurement or anatomical loss affecting one or more of the body's major systems and substantially limiting one or more major life activities.

---

[10]The Rehabilitation Act defines an " 'individual with a disability' " as any person who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." (29 U.S.C. § 706(8)(B).) The federal regulations provide that a physical or mental impairment means "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine . . . ." (45 C.F.R. § 84.3(j)(2)(i) (1992).)

The case law also reveals a general consistency between the current and former versions of section 12926. The regulation, which is now more than a dozen years old, has regularly informed the courts' decisions. Indeed, every reported decision to date has either cited, or is consistent with, the regulatory provision. In *Pickrel* v. *General Telephone Co.* (1988) 205 Cal.App.3d 1058, 1061 [252 Cal.Rptr. 878], for example, the court relied on the regulation in holding that the plaintiff's back injury—a physiological disorder affecting the musculoskeletal system—satisfied the definition of physical handicap. In *County of Fresno* v. *Fair Employment & Housing Com.* (1991) 226 Cal.App.3d 1541, 1549 [277 Cal.Rptr. 557], the court noted that the plaintiffs' physical condition, an extreme sensitivity to smoke, constituted a physiological disorder affecting the respiratory system and therefore qualified as a physical handicap under the FEHA. (See also *Raytheon Co.* v. *Fair Employment & Housing Com.* (1989) 212 Cal.App.3d 1242 [261 Cal.Rptr. 197] [acquired immune deficiency syndrome is the result of a virus affecting the human immune system and therefore constitutes a physical handicap under FEHA].) Even the relatively broad holding in *American National, supra,* 32 Cal.3d 603, was informed and limited by the fact that the plaintiff alleged a physiological disorder (high blood pressure) affecting the cardiovascular system and therefore fit neatly within the regulatory requirements.

Thus, it is a relatively simple matter to harmonize the current and former versions of section 12926. Under both, the touchstone of a qualifying handicap or disability is an actual or perceived physiological disorder which affects a major body system and limits the individual's ability to participate in one or more major life activities.

### 5. *Weight as a Physical Handicap or Disability*

The case law specifically addressing claims, brought under FEHA, of handicap discrimination on the basis of weight is minimal but instructive.[11] A succinct analysis is set forth in *Hegwer* v. *Board of Civil Service Comrs.* (1992) 5 Cal.App.4th 1011 [7 Cal.Rptr.2d 389].

---

[11]Although the vast majority of states have enacted statutes prohibiting employment discrimination on the basis of disability or handicap (see Comment, *Employment Discrimination Against Overweight Individuals: Should Obesity Be a Protected Classification?* (1990) 30 Santa Clara L.Rev. 951, 954-955), there is little uniformity among them and minimal case law interpreting their scope. (O'Connor, *supra,* 30 Ariz. L.Rev. at p. 634.) Only one state, Michigan, has specifically codified a prohibition against employment discrimination on the basis of weight. (Mich. Comp. Laws Ann. § 37.2102 (West 1985).) Of the courts that have considered the issue, most have concluded that an individual's weight does not by itself constitute a handicap or disability, but may in conjunction with other related disorders such as diabetes, high blood pressure, cardiovascular disease or osteoarthritis qualify as a handicap or disability under their respective states' antidiscrimination statutes. (See, e.g., *Philadelphia*

There, a paramedic suspended for failure to maintain required levels of fitness and body weight accused her employer, the Los Angeles City Fire Department, of handicap discrimination under the FEHA. The plaintiff claimed to suffer from a thyroid condition which contributed to her obesity.[12] Acknowledging that a person "is considered handicapped under California law if he or she suffers from a physiological disorder affecting the endocrine system, which includes the thyroid (Cal. Code Regs., tit. 2, div. 4, § 7293.6, subd. (d))," the court nevertheless concluded that the department's standards were based upon a " 'bona fide occupational qualification.' (Gov. Code, § 12940)" and therefore upheld the department's disciplinary action. (5 Cal.App.4th at pp. 1024-1025.)

*McMillen* v. *Civil Service Com.* (1992) 6 Cal.App.4th 125 [8 Cal.Rptr.2d 548] is similar, although there the plaintiff, an ambulance driver for a city fire department, did not allege that his failure to maintain body weight

---

*Elec.* v. *Com., Pa. Human Rel.* (1982) 68 Pa. Commw. 212 [448 A.2d 701, 707] [morbid obesity alone, without other physical consequences, is not a handicap under the Pennsylvania antidiscrimination statute]; see also *Mo. Com'n on Human Rights* v. *S.W. Bell Tele.* (Mo.Ct. App. 1985) 699 S.W.2d 75; *Krein* v. *Marian Manor Nursing Home* (N.D. 1987) 415 N.W.2d 793, 796.) And in a widely cited decision a federal district court held that obesity was not a handicap under Washington law because it was not an "immutable" condition such as blindness or lameness. (*Greene* v. *Union Pacific R. Co.* (W.D.Wash. 1981) 548 F.Supp. 3, 5.) Two notable exceptions to the foregoing rationales are *State Div. of Human Rights* v. *Xerox Corp.* (1985) 65 N.Y.2d 213 [491 N.Y.S.2d 106, 480 N.E.2d 695] and *Gimello* v. *Agency Rent-A-Car Systems* (N.J. Super.Ct. App. Div. 1991) 594 A.2d 264. In *Xerox*, the claimant was denied employment because of her obesity and claimed that this was unlawful under New York's Human Rights Law. The court agreed, noting that the law defined "disability" very broadly and that, fairly read, encompassed "merely diagnosable medical anomalies which impair bodily integrity . . . ." (491 N.Y.S.2d at p. 109.) Thus, the court concluded that plaintiff's obesity qualified as a disability notwithstanding the fact that it was "unrelated to any glandular or organic deficiency." (*Id.* at p. 108.) Applying similar reasoning, the court in *Gimello* v. *Agency Rent-A-Car Systems, supra,* 594 A.2d 264, concluded that obesity qualified as a handicap under the New Jersey Law Against Discrimination. The law, the court observed, set forth "a very broad definition" of handicap as including any "physiological . . . condition [ ] which . . . is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques." (*Id.* at p. 276.) This expansive definition, the court held, easily subsumed the medical condition of obesity: "Undisputably, Gimello's obesity exists physiologically and is demonstrable by accepted diagnostic techniques." (*Ibid.*) Clearly, however, these and other out-of-state decisions are distinguishable from the case at bar by the fact that local antidiscrimination laws have widely varying texts and historical antecedents.

[12]Although often used as a synonym for "fat" or "corpulent" (Webster's New Internat. Dict., *supra*, p. 1555), "obesity" in medical terms generally refers to the condition of a person who is 20 percent above the ideal weight; gross or serious obesity is considered 30 to 35 percent over ideal weight; and morbid obesity is either 100 pounds above or twice the ideal weight. (Comment, *The Rehabilitation Act of 1973: Protection for Victims of Weight Discrimination?* (1982) 29 UCLA L.Rev. 947, 948-949.) There was no specific expert testimony here that plaintiff is clinically obese, although medical records introduced by defendant refer, without analysis, to her condition as "obesity." Thus, we shall refrain from use of that term in connection with plaintiff.

standards was caused by any physiological disorder. Assuming, without analysis, that plaintiff's obesity nevertheless qualified as a physical handicap, the court concluded that, as in *Hegwer* v. *Board of Civil Service Comrs.*, *supra*, 5 Cal.App.4th 1011, the department's weight standards were bona fide occupational qualifications. (*McMillen* v. *Civil Service Com.*, *supra*, at pp. 130-131.)[13]

Several decisions dealing with weight as a physical handicap under the federal Rehabilitation Act (29 U.S.C. § 701 et seq.) are also pertinent. As noted earlier, the current definition of "disability" in section 12926, subdivision (k), and the interpretive regulation in the California Code of Regulations (Cal. Code Regs., tit. 2, § 7293.6), are both modeled on the definitions in the Rehabilitation Act (29 U.S.C. § 706(8)(B); 45 C.F.R. § 84.3(j)(2)(i)) and the ADA (42 U.S.C. § 12102; 29 C.F.R. § 1630.2). Thus, interpretations of federal law may be particularly useful "to guide the construction" of this provision of California's antidiscrimination act. (*American Civil Liberties Union Foundation* v. *Deukmejian* (1982) 32 Cal.3d 440, 449 [186 Cal.Rptr. 235, 651 P.2d 822]; *Kaplan's Fruit & Produce Co.* v. *Superior Court* (1979) 26 Cal.3d 60, 65 [160 Cal.Rptr. 745 [603 P.2d 1341].)

Two decisions under the Rehabilitation Act are particularly noteworthy. In *Tudyman* v. *United Airlines* (C.D.Cal. 1984) 608 F.Supp. 739, a male applicant for a position as a flight attendant was rejected because he exceeded the

---

[13]A number of decisions have touched on weight as a factor in employment discrimination but are distinguishable. In a pre-FEHA decision, *Blodgett* v. *Board of Trustees* (1971) 20 Cal.App.3d 183 [97 Cal.Rptr. 406], the court held that a teacher's obesity, standing alone, did not constitute good cause for denying the teacher reemployment under provisions of the Education Code providing that such a determination shall be only for cause and shall relate solely to the welfare of the schools and the pupils. (*Id.* at pp. 190-193.) In *State Personnel Bd.* v. *Fair Employment & Housing Com.* (1985) 39 Cal.3d 422 [217 Cal.Rptr. 16 [703 P.2d 354], we held that the FEHA applied to state civil service employees. In so holding we noted, without discussion, that one of the plaintiffs claimed that she had been denied employment with the California Highway Patrol not on the basis of her weight per se, but rather on the ground that she had undergone intestinal bypass surgery to alleviate a weight problem. (*Id.* at p. 426.)

Also distinguishable are those cases holding, under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) or equivalent state civil rights laws, that height and weight requirements may not be used as a basis for employment discrimination where such requirements would have a disparate and unjustified impact on protected groups such as women and minorities. (See, e.g., *Hardy* v. *Stumpf* (1974) 37 Cal.App.3d 958 [112 Cal.Rptr. 739]; *Leag. of U. Latin Am. Citizens* v. *City of Santa Ana* (C.D.Cal. 1976) 410 F.Supp. 873; *Laffey* v. *Northwest Airlines, Inc.* (D.D.C. 1973) 366 F.Supp. 763, 790; see generally Annot. (1979) 44 A.L.R.Fed. 148.)

Weight was also addressed in section 19702, part of the State Civil Service Act, which prohibits discrimination against state employees on the basis, inter alia, of physical handicap. (§ 19702, subd. (a).) Interestingly, formerly that provision also expressly excluded "obesity" from the definition of "physical handicap" as used in the section. (§ 19702, former subd. (c).) Nothing in the statute or legislative history of section 19702, however, reflects on the legislative intent underlying the handicap provision in the FEHA.

airline's body weight guidelines. He sued, claiming that he had been denied employment on the basis of a handicap under the Rehabilitation Act. His weight was apparently the result of extensive body building, resulting in a low percentage of body fat and a high percentage of muscle. (*Id.* at p. 741.) The court granted summary judgment for the airline, observing that the applicant's condition was not the result of a physiological disorder affecting one or more of the body's systems, "e.g, the result of a glandular problem," but rather was "self-imposed and voluntary." (*Id.* at p. 746.) Accordingly, he failed to meet the definition of a handicapped individual under the federal statute.

*Cook* v. *State of R.I., Dept. of MHRH* (D.R.I. 1992) 783 F.Supp. 1569 also addressed the question whether obesity not caused or accompanied by other physiological disorders constitutes a handicap within the meaning of the Rehabilitation Act. The claimant was refused employment by a state agency when she failed to comply with a requirement that she reduce her weight to "something less than three hundred pounds." (*Id.* at p. 1571.) She asserted that the agency's action amounted to discrimination under the federal act. The court concluded otherwise. To constitute a physiological disorder qualifying as a handicap, the court observed, the claimant was required to adduce evidence of some related physiological disorder (e.g., heart disease or diabetes) or some medical evidence that the claimant's obesity itself "is caused by systemic or metabolic factors . . . ." (*Id.* at p. 1573.) As the court explained: "Thus, to the extent that obesity, or Cook's form of obesity, is caused by systemic or metabolic factors and constitutes an immutable condition that she is powerless to control, it may be a physiological disorder qualifying as a handicap. [Citations.] Conversely, to the extent that obesity is a transitory or self-imposed condition resulting from an individual's voluntary action or inaction, it would be neither a physiological disorder nor a handicap." (*Ibid.*)

That obesity does not constitute a qualifying disability absent proof of physiological causation under federal law is also the view of the Equal Employment Opportunity Commission, the administrative agency charged with interpreting and implementing the most recent and far-reaching federal antidiscrimination statute, the ADA (42 U.S.C. § 12101 et seq.). As noted earlier, the ADA's definition of "disability" is drawn from the Rehabilitation Act, which in turn was the model for California's long-standing regulation (Cal. Code Regs., tit. 2, § 7293.6) and current statute (§ 12926, subd. (k)). In explaining the meaning of disability under the ADA, the federal regulations observe: "It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural, and economic characteristics that are not impairments." (29 C.F.R. appen. § 1630.2(h)

(1992).) Examples of the latter include such physical characteristics as "height, *weight*, or muscle tone" that "are not the result of a physiological disorder." (*Ibid.*, italics added; see also 29 C.F.R. appen. § 1630.2(j) (1992) ["Except in rare circumstances, obesity is not considered a disabling impairment."].)

Thus, both judicial and administrative interpretations of the federal statutes on which our law is modeled uniformly reject the argument that weight unrelated to a physiological, systemic disorder constitutes a handicap or disability. These interpretations are also consistent with most other state court decisions on the subject. (See Shapiro, *The Heavy Burden of Establishing Weight as a Handicap Under Anti-Discrimination Statutes* (1991) 18 Western St.U. L.Rev. 565, 569 ["Most courts have held that obesity by itself, without a related medical condition or other impairment, is not a handicap."]; Comment, *Employment Discrimination Against Overweight Individuals: Should Obesity Be a Protected Classification?*, *supra*, 30 Santa Clara L.Rev. 951, 961 ["Most courts have examined whether or not obesity is a handicap and have found that it is not."].) And the recent decision of the California Court of Appeal in *Hegwer* v. *Board of Civil Service Comrs.*, *supra*, 5 Cal.App.4th 1011, is in accord. We conclude, therefore, that an individual who asserts a violation of the FEHA on the basis of his or her weight must adduce evidence of a physiological, systemic basis for the condition.

### 6. *Perception of Handicap or Disability*

Even if weight does not qualify as an actual handicap or disability within the meaning of the FEHA, plaintiff argues that one might still qualify as a handicapped individual if one is "regarded" as such. As previously noted, the regulation defines a handicapped individual as one who, inter alia, "[i]s regarded as having such a physical handicap" (Cal. Code Regs., tit. 2, § 7293.6, subd. (i)), and the current statute provides that "physical disability" includes, "Being regarded as having or having had a disease, disorder, condition, cosmetic disfigurement, anatomical loss, or health impairment described in paragraph (1) or (2)." (§ 12926, subd. (k)((3).)

Plaintiff's argument is unavailing. As the language of the statute makes clear, it is not enough to show that an employer's decision is based on the perception that an applicant is disqualified by his or her weight. The applicant must be "regarded as having or having had" a condition "*described in paragraph (1) or (2),*" to wit, a physiological disease or disorder affecting one or more of the bodily systems. The regulation similarly requires that the applicant must be regarded as having "*such* a physical handicap." (Italics added.) In other words, the condition, as perceived by the employer, must

still be in the nature of a physiological disorder within the meaning of the FEHA, even if it is not in fact disabling. (See *Cook* v. *State of R.I., Dept. of MHRH, supra,* 783 F.Supp. at p. 1575 [perception of applicant's weight as a handicapping condition does not render applicant handicapped within the meaning of the Rehabilitation Act]; *American Motors Corp.* v. *Labor & Industry* (1984) 119 Wis.2d 706 [350 N.W.2d 120, 125] [perception of applicant's height as a disqualification does not make the individual disabled where stature is not a physical disability or impairment under the state's fair employment act].)

█ Applying the foregoing principles to the case at bar, we conclude that plaintiff failed to establish a prima facie case of employment discrimination by demonstrating she fits within the class of handicapped or disabled persons protected by the FEHA. The record is devoid of any evidence that plaintiff's weight is the result of a physiological condition or disorder affecting one or more of the body systems. (§ 12926, subd. (k); Cal. Code Regs., tit. 2, § 7293.6, subd. (d).) Indeed, plaintiff alleged in her complaint and maintained at trial that despite her weight she is a healthy, fit individual. Thus, she demonstrated neither an actual nor a perceived handicap within the meaning of the FEHA.

It follows that the trial court erred in denying Community Foods' motion for nonsuit, which was based squarely on plaintiff's failure to adduce any evidence, "medical, competent or otherwise, to establish that [plaintiff's weight] is a physical or a perceived physical handicap." As previously discussed, the requirement that plaintiff establish a physiological basis for her alleged handicap was relatively settled at the time of trial. Furthermore, she was clearly on notice of the potential importance of such evidence through the motions of defendants. Having thus received a full and fair opportunity to prove her case, she is not entitled to a new trial. (*Eatwell* v. *Beck* (1953) 41 Cal.2d 128, 135 [257 P.2d 643]; *McCoy* v. *Hearst Corp.* (1991) 227 Cal.App.3d 1657, 1661 [278 Cal.Rptr. 596]; Code Civ. Proc., § 657.)

Accordingly, the judgment of the Court of Appeal is reversed.

Lucas, C. J., Mosk, J., Panelli, J., Kennard, J., Baxter, J., and George, J., concurred.

Appellant's petition for a rehearing was denied October 28, 1993.